UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
WESTCHESTER COURTHOUSE

| | |
|---|---|
| Sharon Pizzaro, individually and on behalf of all others similarly situated, | 7:23-cv-02751 |
| Plaintiff, | |
| - against - | Class Action Complaint |
| Sazerac Company, Inc., | Jury Trial Demanded |
| Defendant | |

Plaintiff alleges upon information and belief, except for allegations about Plaintiff, which are based on personal knowledge:

### I. JOURNALISTS IN VIRGINIA AND CAROLINAS NOTICE "LOOKALIKE LIQUOR" IN UNEXPECTED PLACES

1. Around 2018, journalists in Virginia and the Carolinas noticed what appeared to be hard liquor in places other than state-licensed Alcohol Beverage Control ("ABC") stores.[1]



---

[1] Benjamin Briscoe, That's Not Liquor At The Gas Station But it sure does look like it!, WFMY News 2, July 11, 2018 (Greensboro, North Carolina); Audrey Biesk, Fake Booze: Convenience stores start stocking shelves with faux liquor, WMBF News, May 9, 2018 (Horry County, South Carolina); Ned Oliver, How a major distiller slipped liquor look-a-likes into Virginia convenience stores, Virginia Mercury, March 4, 2019 (Richmond, Virginia).



2. These displays "at one local gas station showcase[d] names like Hobble Creek, Stroyski, Flash Point [Cinnamon] [Vera Cruz and Caribe Bay] … [] names one would typically associate with bourbon, vodka, [] Fireball [tequila and rum]."



3. The reporters noted that residents "had questions [] when bottles that look an awful lot like whiskey, vodka and rum popped up at a 7-Eleven [and other convenience stores]," because

"[they] would expect to see those mini-bottles [only] at ABC liquor stores."

4. One Virginian tweeted, "ummm I'm not trying to narc but uhhhh what is this liquor display in a convenience store in VIRGINIA, did I miss something?!?!"

> ummm I'm not trying to narc but uhhhh what is this liquor display in a convenience store in VIRGINIA, did I miss something?!?! pic.twitter.com/TQsaNwisLY
>
> — taber (@taber) February 25, 2019

5. A convenience store owner commented that "Everybody who comes over here is surprised. 'Oh, you guys start selling liquor?' I say, well, this is not liquor it's wine."[2]

6. According to one customer, "It could have you fooled, I guess. You know what I'm saying? Because it looks like you got it out of the ABC store somewhere."

7. Other customers commented that "[T]he branding is clearly intended to evoke the products they mimic without using words like whiskey or vodka," with Hobble Creek labeled as "traditional, blended, special select" and Stroyski as "Russian Style Premium."




---

[2] Jake Burns, Wine-based liquor look-a-likes hit shelves of Virginia convenience stores, WTVR CBS 6 News Richmond, March 04, 2019.

8. Even leading online sellers of alcohol were confused by Flash Point Cinnamon, with Total Wine describing it as an "American Whiskey" "perfect for sipping [and] shooting" that was also a "Wine based product."

**Product Information**

USA- Open up a bottle, find your flash point, and let it burn. With the taste of sweet cinnamon, Flash Point is perfect for sipping, shooting, and most of all sharing. Perfect in any cocktail. Wine based product that looks, smells, and mixes like a spirit.

| | |
|---|---|
| BRAND | Flash Point |
| COUNTRY | United States |
| STATE | Kentucky |
| SPIRITS TYPE | American Whiskey |
| ABV | 16% |
| SKU | 191042100-1 |

9. Others purchased Flash Point Cinnamon and "had not even thought about it being something other than a whiskey, figure[ing] it was just a cheap [k]nock-off of fireball [whiskey], and yes was bought from a gas station, didn't think about that part … Really should have looked it over more, this stuff is a huge disappointment when you are looking for a cinnamon whiskey kick."



Will says:
February 22, 2020 at 10:34 pm

i had not even thought about it being something other than a whiskey, figured it was just a cheap nock-off of fireball, and yes was bought from a gas station, didn't think about that part. Been a few years since I had cinnamon whiskey when i saw the bottle i thought… that just sounds right for tonight and had the clerk grab one for me. Really should have looked it over more, this stuff is a huge disappointment when you are looking for a cinnamon whiskey kick. It has the smell, has a cinnamon taste, but there is just no … great ball of fire traversing your neck and setting your stomach on fire.

10. This "new line of products" was designed to "look and taste like liquor" "specifically for states [] with strict regulations on where and how liquor can be sold," based on alcohol by volume ("ABV") and proof.

4

11. The result is that they can "be sold in convenience stores and gas stations," seven days a week and twenty-four hours per day, in contrast to the more limited hours of a liquor store.

12. These "pseudo-spirits" are "made by heavily filtering and then flavoring [and coloring] a wine base."

13. Little information was publicly available about the manufacturer of these products, Brookstone Distillery Company, even though none of these products were distilled.

## II.   SIMILAR "PSEUDO-SPIRITS" ARRIVE IN NEW YORK, PUZZLING PUBLIC

14. Fast forward two years and the same questions asked by those in Virginia and the Carolinas were asked in New York.

15. Not far from this Court in Poughkeepsie, radio host CJ McIntyre of 101.5 WPDH, "the home of rock and roll in the Hudson Valley," was shocked to see "a huge Fireball display in front of the cash register" at a gas station convenience store.[3]



16. Similar to the reaction in Virginia and the Carolinas, McIntyre remarked that "[he] thought [Fireball] was something you could only buy at a liquor store, right? I mean it's cinnamon

---

[3] CJ McIntyre, Since When Can You Buy Fireball at Gas Stations in the Hudson Valley?, 101.5 WDPH, Hudson Valley Country, May 14, 2021

5

flavored whiskey!!"

17. He wondered if "this specific store [was] doing something they're not supposed to be doing?"

18. Up in the Capital Region, Q105.7's Steve King reported a similar experience, when he "stopped for gas at my local convenient store and went in to grab a cup of coffee," "surprised by a new countertop display next to the cash register … little bottles of Fireball."[4]




19. Incredulous, King "asked the cashier behind the counter, 'You carry Fireball now?' she said, 'Yeah, I guess.'"

20. King "thought it was weird seeing Fireball for sale in the gas station since [he] thought liquor could only be sold in liquor stores in New York," until he learned from the Albany Times Union "that wasn't Fireball Cinnamon Whisky (left) [] at the gas station/convenience store.

---

[4] Steve King, Wait? Can You Buy Fireball at Gas Stations & Grocery Stores Now?, Q105.7 WQBK-FM, April 9, 2021.

6

Nope, it was Fireball Cinnamon (right)."

 

21. Senior Writer and Arts Editor Steve Barnes wrote how "[A] friend who peddles booze for a living dropped me a note describing upset among his client liquor stores because customers think Fireball Cinnamon Whisky is being sold in supermarkets in small bottles for 99 cents."[5]

22. Liquor stores reported a decline in sales of Fireball cinnamon whisky, confirmed by their customers who told them they preferred to purchase it for lower prices elsewhere.

23. Barnes shared "a photo posted on a local alcohol-focused Facebook group that asked, 'How can ShopRite [a supermarket] sell (this)???'"

---

[5] Steve Barnes, Liquor stores heated up over sneaky Fireball move, Table Hopping Blog, Albany Times Union, April 8, 2021.

7



24. Barnes addressed "How the hell is this stuff now in supermarkets and gas stations?," and it is "[B]ecause it's not actual Fireball Cinnamon Whisky. It's a malt-beverage version called simply Fireball Cinnamon."

25. Unlike Fireball Whisky, a distilled spirit, Fireball Cinnamon is a malt beverage based on fermentation to create a neutral base to which flavors and colors are added ("Flavored Malt Beverage" or "FMB").

26. Fireball Cinnamon "clocks in at 33 proof, or 16.5 percent [ABV] [while] Fireball Cinnamon Whisky is [] 66 proof [and 33 percent ABV]."

27. According to Barnes, "The labels look almost identical [and] [T]hat is intentional," but if consumers "look closer [they] will see [one is] actually called simply" "'Fireball Cinnamon (notice there's no Whisky after the word Cinnamon)," flavored to taste like cinnamon whisky.

 

28. Barnes explained that though in general, distilled spirits are technically sold in liquor stores, "Trying to make sense of the complexities of which stores can sell what becomes an exercise in foundering in the State Liquor Authority website, which I recommend only for frustration masochists."

29. The "distinctions are largely based on ingredients and how a beverage is made, and in some instance on the percentage of alcohol by volume."

30. For "liquor, liqueur, spirit or is distilled, it may be sold only in a liquor store in New York state, but liquor stores can't sell malt-liquor products or beer. Which means wine/liquor stores can sell cider, mead and wine products, as can supermarkets. However, wine/liquor are off-limits in grocery/drug/convenience stores, and beer and malt liquor are verboten in wine/liquor retailers. Got that?"

31. Barnes did not mention that FMB's can obtain a significant amount of their alcohol content from "added flavoring" from distilled spirits, a loophole in the relevant regulations.

32. Interestingly, the same company which introduced the "fake liquor" in the Virginias and Carolinas is responsible for Fireball Cinnamon (the "Product"), because Brookstone is a subsidiary of Sazerac Company, Inc. ("Defendant").

33. While federal and identical state regulations allow the cinnamon version to use the

distilled spirit brand name of Fireball, they prohibit the overall misleading impression that it is identical to the whisky version.

34. According to information disclosed before the Trademark Trials and Appeals Board ("TTAB"), "fireball" is the name, or part of the name, of a number of cocktails, shots and shooters, most of which include whisky or liqueur(s) as ingredients.

35. The name has become part of the lexicon of alcoholic beverages in the same way martinis and margaritas indicate the presence of gin and tequila.

36. The sale of distilled spirits in small bottles, referred to as "minis" or "nips," is common and known to most Americans due to their abundance on the side of most roads or from being available on airplanes.

37. Until a few years ago, no consumers would have seen non-distilled spirits sold in mini bottles.

38. The concept of bottling non-distilled spirits in a mini bottle is deceptive, because purchasers of small bottles of alcohol expect what they are buying is potent and high in proof, like the Fireball Whisky, bottled at 33% alcohol by volume ("ABV") or 66 proof.

39. Purchasers of mini bottles of alcohol are not expecting that what they are buying will be half as strong, as the Fireball Cinnamon is 16.5% ABV and 33 proof.

40. "Fireball" is not qualified with the word "brand," which could alert purchasers what they are buying has little connection to cinnamon whisky.

41. Even the Fireball Cinnamon's statement of composition, in the smallest allowed size, draws particular attention to the apparent use of the distilled spirit of whisky, stating "Malt Beverage With Natural Whisky & Other Flavors and Carmel Color."



42. Using the words "With Natural Whisky & Other Flavors" is a clever turn of phrase because consumers who strain to read this will see how "Natural Whisky" is on a separate line and apparently unconnected to the "Other Flavors."

43. Should purchasers look very closely and see "Malt Beverage," they will think it is combined with "Natural Whisky," like Fireball Whisky.

44. What the label means to say is that the Product contains "Natural Whisky Flavors & Other Flavors," but by not including the word "Flavors" after "Natural Whisky," purchasers who look closely will expect the distilled spirit of whisky was added as a separate ingredient.

45. However, even where a distilled spirit is used to manufacture flavors, it loses its class and type when blended with other ingredients.

46. Sources have confirmed that the amount of real whiskey in the Product is the equivalent of a thimble full per 2,500 gallons, less than a "drop in a bucket" in the malt beverage base.

47. When viewed together with the Fireball distilled spirit brand name, the label misleads consumers into believing it is or contains distilled spirits.

48. As a result of the false and misleading representations, the Product is sold at a

11

premium price, $0.99 for 50 mL.

## Jurisdiction and Venue

49. Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

50. The aggregate amount in controversy exceeds $5 million, including any statutory and punitive damages, exclusive of interest and costs.

51. Plaintiff is a citizen of New York.

52. Defendant is a citizen of New Orleans and Kentucky.

53. The class of persons Plaintiff seeks to represent includes persons who are citizens of different states from which Defendant is a citizen.

54. The members of the class Plaintiff seeks to represent are more than 100, because the Product has been sold with the representations described here from thousands of stores including grocery stores, big box stores, gas stations and convenience stores, in the States Plaintiff seeks to represent.

55. Venue is in this District with assignment to the Westchester Courthouse because Plaintiff resides in Westchester County and a substantial part of the events or omissions giving rise to these claims occurred in Westchester County, including Plaintiff's purchase, reliance on the identified statements and omissions, and subsequent awareness they were false and misleading.

## Parties

56. Plaintiff Sharon Pizzaro is a citizen of New Rochelle, Westchester County, New York.

57. Defendant Sazerac Company, Inc. is a New Orleans corporation with a principal place of business in Kentucky.

58. Defendant manufactures and markets Fireball Cinnamon Whisky and Fireball Cinnamon.

59. Defendant "saw an untapped market to provide [] product[s] that looked and smelled like a whiskey (or vodka, or Fireball) but wasn't actually a whiskey [vodka or Fireball] … and would therefore would be legal to sell in a convenience store."

60. Defendant first introduced its "gas station" liquor in Virginia, North Carolina and South Carolina under unknown brand names.

61. Defendant was prepared to market Fireball Cinnamon as Fireball Whiskey, based on its previous experience selling Flash Point Cinnamon, considered by customers to be a lower valued Fireball product.

62. Defendant next rolled out this same "gas station" liquor but under the brand names of distilled spirit products.

63. Purchasers of Fireball Cinnamon generally are disappointed that what they have bought and consumed is not Fireball Whisky nor contain any whiskey beyond a negligible amount.

64. Plaintiff purchased Fireball Cinnamon at gas station convenience stores and convenience stores near where she lives in New Rochelle between 2021 and 2023, among other times.

65. When she saw Fireball Cinnamon available, she did not think twice about buying it, thinking it was the same Fireball Whiskey she had previously purchased at liquor stores.

66. Plaintiff decided to purchase Fireball Cinnamon at local gas station convenience stores because it was more convenient, because there were more of them than liquor stores, open longer hours, and she went there anyway to get gas for her car, among other things.

67. Plaintiff is like many consumers of alcoholic beverages who prefer distilled spirits

13

or products containing distilled spirits to malt-based beverages.

68. Plaintiff saw the labeling elements of the Fireball Cinnamon and did not immediately notice the differences from the Fireball Whisky.

69. Plaintiff expected Fireball Cinnamon to be whisky and/or contain whisky in a non-de minimis amount.

70. Plaintiff paid more for the Product than she would have had she known the representations and omissions were false and misleading, or would not have purchased it.

71. The value of the Product that Plaintiff purchased was materially less than its value as represented by Defendant.

## Class Allegations

72. Plaintiff seeks certification under Fed. R. Civ. P. 23 of the following classes:

> **New York Class:** All persons in the State of New York who purchased the Product during the statutes of limitations for each cause of action alleged;

73. Common questions of issues, law, and fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

74. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

75. Plaintiff is an adequate representative because her interests do not conflict with other members.

76. No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

77. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

78. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

New York General Business Law ("GBL") §§ 349 and 350

79. Plaintiff incorporates by reference all preceding paragraphs.

80. Plaintiff expected the Product would contain distilled spirits in a non-de minimis or non-negligible amount.

81. Plaintiff would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Breaches of Express Warranty,<br>Implied Warranty of Merchantability/Fitness for a Particular Purpose<br>and Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.

82. The Product was manufactured, identified, marketed, and sold by Defendant and expressly and impliedly warranted to Plaintiff that it would contain distilled spirits in a non-de minimis or non-negligible amount.

83. Defendant directly marketed the Product to Plaintiff through its advertisements and marketing, through various forms of media, on the packaging, in print circulars, direct mail, product descriptions, and targeted digital advertising.

84. Defendant knew the product attributes that potential customers like Plaintiff were seeking and developed its marketing and labeling to directly meet their needs and desires, which was the consumption of distilled spirits instead of a malt beverage.

85. The representations about the Product were conveyed in writing and promised it would be defect-free, and Plaintiff understood this meant it would contain distilled spirits in a non-de minimis or non-negligible amount.

86. Defendant's representations affirmed and promised that the Product would contain distilled spirits in a non-de minimis or non-negligible amount.

87. Defendant described the Product so Plaintiff believed it would contain distilled spirits in a non-de minimis or non-negligible amount, which became part of the basis of the bargain that it would conform to its affirmations and promises.

88. Defendant had a duty to disclose and/or provide non-deceptive promises, descriptions and marketing of the Product.

89. This duty is based on Defendant's outsized role in the market for cinnamon whisky as the seller of Fireball Whisky.

90. Plaintiff recently became aware of Defendant's breach of the Product's warranties.

91. Plaintiff provided or provides notice to Defendant, its agents, representatives, retailers, and their employees that it breached the Product's warranties.

92. Defendant received notice and should have been aware of these issues due to complaints by consumers and third-parties, including regulators and competitors, to its main offices and through online forums.

93. The Product did not conform to its affirmations of fact and promises due to Defendant's actions.

94. The Product was not merchantable because it was not fit to pass in the trade as advertised, not fit for the ordinary purpose for which it was intended and did not conform to the promises or affirmations of fact made on the packaging, container, or label, because it was marketed as if it would contain distilled spirits in a non-de minimis or non-negligible amount.

95. The Product was not merchantable because Defendant had reason to know the particular purpose for which they were bought by Plaintiff, because she expected that it would

contain distilled spirits in a non-de minimis or non-negligible amount, and they relied on its skill and judgment to select or furnish such a suitable product.

## Fraud

96. Defendant misrepresented and/or omitted the attributes and qualities of the Product, that it would contain distilled spirits in a non-de minimis or non-negligible amount.

## Unjust Enrichment

97. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

## Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Certifying Plaintiff as representative and the undersigned as counsel for the class;
2. Awarding monetary, statutory and/or punitive damages and interest;
3. Awarding costs and expenses, including reasonable attorney and expert fees; and
4. Other and further relief as the Court deems just and proper.

Dated:   April 2, 2023

Respectfully submitted,

/s/ Spencer Sheehan
Sheehan & Associates, P.C.
60 Cuttermill Rd Ste 412
Great Neck NY 11021
(516) 268-7080
spencer@spencersheehan.com