UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SHARON PIZZARO, *individually and on
behalf of all others similarly situated, et al.*,

                              Plaintiffs,                    No. 23-CV-2751 (KMK)

        v.

SAZERAC COMPANY, INC.,

                              Defendant.

---

CINDY KOONCE, *individually and on
behalf of all others similarly situated*,

                              Plaintiff,                     No. 23-CV-4323 (KMK)

        v.                                                  <u>OPINION & ORDER</u>

SAZERAC COMPANY, INC.,

                              Defendant.

---

<u>Appearances</u>:

Michael R. Reese, Esq.
Charles D. Moore, Esq.
Reese LLP
New York, NY; Minneapolis, MN
*Counsel for All Plaintiffs*

Spencer Sheehan, Esq.
Sheehan & Associates, P.C.
Great Neck, NY
*Counsel for Plaintiff Pizzaro*

Creighton R. Magid, Esq.
Elizabeth R. Baksh, Esq.
Dorsey & Whitney LLP
New York, NY; Washington, DC
*Counsel for Defendant*

KENNETH M. KARAS, United States District Judge:

Plaintiffs Sharon Pizarro ("Pizarro") and Larry Zielinski ("Zielinski"), individually and on behalf of all others similarly situated, filed a putative class action (the "*Pizarro* Action") against Sazerac Company, Inc. ("Defendant"), alleging that the labeling on and packaging of certain of Defendant's beverages is deceptive and misleading.  (*See generally* Second Consol. Am. Class Action Compl. ("*Pizarro* SAC") (Dkt. No. 30, Case No. 23-CV-2751).)  Plaintiff Cindy Koonce ("Koonce," and together with Pizarro and Zielinski, "Plaintiffs"), individually and on behalf of all others similarly situated, has filed a similar putative class action (the "*Koonce* Action") against Defendant.  (*See generally* First Am. Class Action Compl. ("*Koonce* FAC") (Dkt. No. 20, Case No. 23-CV-4323).)  More specifically, Plaintiffs assert that Defendant's labeling of its malt-based Fireball and Parrot Bay alcoholic beverages violates §§ 349 and 350 of the New York General Business Law ("GBL"), N.Y. Gen. Bus. Law §§ 349–50.  (*See Pizarro* SAC ¶¶ 75–90; *Koonce* FAC ¶¶ 66–87.)[1]  Before the Court is Defendant's Motion To Dismiss the *Pizarro* SAC pursuant to Federal Rule of Civil Procedure 12(b)(6) (the "*Pizarro* Motion") and Defendant's Motion To Dismiss the *Koonce* FAC pursuant to that same Rule (the "*Koonce* Motion"; together with the *Pizarro* Motion, the "Motions").  (*See Pizarro* Not. of Mot. (Dkt. No. 32, Case No. 23-CV-2751); *Koonce* Not. of Mot. (Dkt. No. 31, Case No. 23-CV-4323).)  For the following reasons, the Court denies Defendant's Motions.

---

[1] Unless otherwise noted (as here), the Court cites to the ECF-stamped page number in the upper-right corner of each page in cites from the record.

## I. Background

### A. Factual Background

Unless otherwise stated, the following facts are drawn from the *Pizarro* SAC and the *Koonce* FAC. The facts alleged therein are assumed true for the purpose of resolving the instant Motion. *See Buon v. Spindler*, 65 F.4th 64, 69 n.1 (2d Cir. 2023).

#### 1. *Pizarro* Facts

Defendant manufactures, markets, and distributes a variety of alcoholic beverages. (*Pizarro* SAC ¶ 2; *see also Koonce* FAC ¶¶ 1–2 (noting that Defendant bills itself as a "premier global spirits company" and that its liquor brands include Southern Comfort whiskey and Romana Sambuca).) One such beverage is Fireball Cinnamon Whisky ("Fireball Whisky"). (*Pizarro* SAC ¶ 2.)[2] As alleged, Fireball Whisky is "one of the most popular drinks to down—particularly in shot form." (*Id.* (citation omitted).) Fireball Whisky has been on the market since the 1980s and, famously (at least in some circles), it is a "concoction of whiskey, sweetener, and cinnamon flavoring." (*Id.* ¶ 5; *see also id.* ¶ 47 ("The name [Fireball] has become part of the lexicon of alcoholic beverages in the same way martinis and margaritas indicate the presence of gin and tequila.").) Thus, Fireball Whisky's base ingredient is the distilled spirit, whiskey. (*Id.* ¶ 7.) In terms of alcohol content, Fireball Whisky contains 33% alcohol by volume ("ABV"). (*Id.* ¶ 4.) Like other distilled spirits, Fireball Whisky is often sold in small bottles known as "minis" or "nips." (*See id.* ¶¶ 48, 50–51; *see also id.* ¶ 48 (noting that such bottles are "common and known to most Americans due to their abundance on the side of most roads or from being available on airplanes").)

---

[2] As Pizarro and Zielinski point out, Fireball Whisky uses that particular spelling because the product was developed in Canada. (*Pizarro* SAC 3 n.3.) Given that this Court is in the United States, it will otherwise use the more typical spelling of the beverage—"whiskey."

In addition to its Fireball Whisky, Defendant produces a Fireball Cinnamon malt beverage ("Fireball Malt"), which—unlike Fireball Whisky—contains 16.5% ABV.  (*Id.* ¶¶ 1, 4.)  Fireball Malt is a malt beverage with "natural whisky & other flavors and caramel color." (*Id.* ¶ 7.)  Therefore, as a malt beverage, Fireball Malt's base ingredient is, unsurprisingly, malt, which, as alleged, "is boiled like beer and fermented with yeast."  (*Id.*; *see also id.* ¶ 38 (alleging that "Fireball [Malt] is a malt beverage based on fermentation to create a neutral base to which flavors and colors are added").)  Fireball Malt has been on the market for less time than Fireball Whisky and enjoys "nowhere near the success" of the distilled product.  (*Id.* ¶ 6.)  However, like Fireball Whisky, Fireball Malt is sold in "mini" or "nip" bottles.  (*See id.* ¶¶ 8, 33, 36, 49–51.)

Pizarro and Zielinski allege that, notwithstanding the fundamental differences between the products, they are sold with labels and in packaging that is nearly identical.  (*See id.* ¶ 8.) Specifically:

> Both products come in similar clear, plastic bottles.  Both products have the same signature red cap.  Both products have the same coloring and look the same upon inspection.  Both products are labeled "Fireball," with the same font, font size, and placement.  Both products have the same logo of a red demon [alongside the words "RED" and "HOT" in red text], with similar size and placement.  Both products say "Cinnamon" under the logo[.]

(*Id.*)

That said, the labels themselves are not *fully* identical.  (*See id.* ¶¶ 8, 35, 40, 52.)  In particular, the label for Fireball Whisky says, "CINNAMON WHISKY" under the red demon logo, whereas Fireball Malt just says, "CINNAMON."  (*Id.* ¶ 8.)  Additionally, at the bottom of the Fireball Whisky label it states, in small font, "ALC. 33% BY VOL. (66 PROOF)" and, in even smaller font and bold text, "**WHISKY WITH NATURAL CINNAMON FLAVOR**." (*Id.*)  By contrast, at that bottom of the Fireball Malt label, it states, in small font, "3.4 FL. OZ. BOTTLED BY SAZERAC CO., FRANKFORT, KY," and "MALT BEVERAGE WITH

NATURAL WHISKY & OTHER FLAVORS AND CARAMEL COLOR."  (*Id.* ¶ 52.)  With

regard to the latter phrase, there is a line break between "WHISKY" and the ampersand.  (*See*

*id.*)

      Pizarro and Zielinski allege that "[w]hen viewed together with the Fireball Whisky

[label], the [Fireball Malt] label misleads consumers into believing it is or contains whiskey."

(*Id.* ¶ 54.)  Indeed, as Pizarro and Zielinski point out, among the questions on its FAQ page,

Defendant's website included:  "HOW CAN I TELL THE DIFFERENCE BETWEEN

FIREBALL CINNAMON [i.e., Fireball Malt] AND FIREBALL WHISKY PRODUCTS?"  (*Id.*

¶ 10.)  Pictures of the front labels of both Fireball Whisky and Fireball Malt, along with a close-

up picture of the small-font text on the Fireball Malt label—which were included in the *Pizarro*

SAC—are reproduced below.




(*Id.* ¶ 33.)



(*Id.* ¶ 52.)

Pizarro and Zielinski allege that the similar labels are misleading to the public. (*See generally id.*) For example, they quote a New York-based radio host as saying that he "was shocked to see 'a huge Fireball display in front of the cash register' at a gas station convenience store." (*Id.* ¶ 28 (citation omitted); *see also id.* ¶ 29 (noting that the radio host said, "[he] thought [Fireball] was something you could only buy at a liquor store, right? . . . [I]t's cinnamon flavored whiskey!!") (first and second alterations in original).)[3] Indeed, the radio host "wondered if 'this specific store [was] doing something they[ weren't] supposed to be doing[.]'" (*Id.* ¶ 30 (first alteration in original).) Similarly, another New York radio host was "surprised" when he "stopped for gas at [his] local convenience store and went in to grab a cup of coffee," because he saw "a new countertop display next to the cash register [of] little bottles of Fireball." (*Id.* ¶ 31 (alteration adopted).) He asked the cashier, "[y]ou carry Fireball now[,]" to which she responded, "[y]eah, I guess." (*Id.* ¶ 32.) It turned out that that display contained Fireball Malt. (*See id.* ¶ 33; *see also id.* ¶ 34 (quoting an article that stated: "A friend who peddles booze for a living dropped me a note describing upset among his client liquor stores because customers think Fireball [] Whisky is being sold in supermarkets in small bottles for 99 cents." (alteration adopted)).)[4]

---

[3] Although several of the allegations in the *Pizarro* SAC contain hearsay, the "admissibility of an allegation is not a concern at the motion[-]to[-]dismiss stage." *PDV USA, Inc. v. Interamerican Consulting Inc.*, No. 20-CV-3699, 2021 WL 2581569, at *8 (S.D.N.Y. June 22, 2021); *see also Campanella v. County of Monroe*, 853 F. Supp. 2d 364, 378 (W.D.N.Y. 2012) ("Although, as pleaded, these allegations are based on hearsay, that does not bar the [c]ourt from considering them on a motion to dismiss.").

[4] A part of the radio host's confusion stemmed from the fact that he "thought liquor[, like Fireball Whisky,] could only be sold in liquor stores in New York." (*Pizarro* SAC ¶ 33.) And, notably, the *Pizarro* SAC asserts that "[l]iquor stores [have] reported a decline in sales of Fireball [Whisky], confirmed by their customers who told them they preferred to purchase it for lower prices elsewhere." (*Id.* ¶ 35.)

Pizarro alleges that she purchased Fireball Malt "at gas station convenience stores and [other] convenience stores near where she lives in New Rochelle[, NY] between 2021 and 2023, among other times." (*Id.* ¶ 62.)  As alleged, "she saw Fireball [Malt] available, [and] did not think twice about buying it, thinking it was the same Fireball Whisk[]y she had previously purchased at liquor stores." (*Id.*)

Similarly, Zielinski asserts that he purchased "three bottles of Fireball [Malt]—two larger bottles for approximately $8.00 each, and one mini bottle for approximately $1.25—from Edson Minimart" in Buffalo, NY. (*Id.* ¶ 63.)  Prior to making his purchase, Zielinski saw that the bottles were labeled "Fireball Cinnamon" and he understood that that name signified that he was going to be purchasing Fireball Whisky. (*Id.*)

> ### 2. *Koonce* Facts

The allegations in the *Koonce* FAC largely mirror those in the *Pizarro* SAC. (*Compare, e.g.*, *Koonce* FAC ¶¶ 21–30, *with Pizarro* SAC ¶¶ 27–34, 39–40.)  In addition to its Fireball products, Defendant produces a line of rums under the mark "Parrot Bay" ("Parrot Bay Rum"). (*Koonce* FAC ¶ 3.)  According to Defendant, its Parrot Bay Rum products "give rum drinkers consistent quality and festive versatility for great tasting, tropical cocktails." (*Id.* (alteration adopted) (citation omitted).)

The "original" Parrot Bay Rum variety is advertised as a rum with "Natural Coconut Flavor," and is 21% ABV. (*Id.* ¶ 4.)  Like Fireball Whisky, Parrot Bay Rum is sold in bottles known as "minis" or "nips[.]" (*Id.* ¶ 32.)  In addition to Parrot Bay Rum, Defendant also produces malt-based Parrot Bay ("Parrot Bay Malt") products. (*Id.* ¶ 9.)  Parrot Bay Malt is 16.5% ABV, and is sold for $1.42 for a 1.69oz "shot." (*Id.* ¶¶ 35, 47.)

Koonce alleges that the labels for Parrot Bay Malt and Parrot Bay Rum "use[] the same font for [their] name and [] flavor; the same beach background with the titular parrot, and all-in-all look[] nearly identical[.]"  (*Id.* ¶ 36; *see also id.* ¶ 38 ("Making the confusion between the two even worse is the inclusion of the same logo placed over a beach with a parrot landing on the name font-type, and bottle design prominently on the front label of both the original distilled version as well as the mini Malt version.").)  To the extent the labels are different, the Parrot Bay Rum label says below the products flavor—e.g., coconut—"RUM WITH NATURAL COCONUT FLAVOR."  (*Id.* ¶ 4.)  And under the bottle's volume it states, "21% ALC BY VOL (42 PROOF)."  (*Id.*)  By contrast, below the flavor, the Parrot Bay Malt label states, in small font: "Bottled By Parrot Bay Co.[,] Owensboro, KY"; "1.69 FL OZ • 16% ALC BY VOL"; and "MALT BEVERAGE WITH NATURAL FLAVORS."  (*Id.* ¶ 37 (alleging that "[i]t is only on the closest inspection—reading the finest print on a 'mini' or 'nip' bottle—does [Defendant] omit the word 'rum'").)

Koonce alleges that "[w]hen viewed together with the Parrot Bay Rum distilled spirit brand name, the [Parrot Bay Malt] label misleads consumers into believing it is or contains distilled spirits, or in fact rum."  (*Id.* ¶ 40.)  As above, pictures of the front labels of both Parrot Bay Malt and Parrot Bay Rum, along with a close-up picture of the small-font text on the Parrot Bay Malt label—which were included in the *Koonce* FAC—are reproduced below.

  

(*Id.* ¶ 36.)



(*Id.* ¶ 37.)

Koonce purchased Parrot Bay Malt "at gas station convenience stores and [other] convenience stores in and around Newburgh, NY, at stores such as 1247 Deli Grocery Corp., 5 Corners Market, Adam's Market Deli & Grocery, and [at] various Citgo gas stations between

June 2020 and May 2023." (*Id.* ¶ 50.)  As alleged, when she "saw the [Parrot Bay] Malt available, Plaintiff read the representations of the Parrot Bay logos, font size and type[] . . . , thinking it was the same Parrot Bay Rum she had previously purchased at liquor stores." (*Id.* ¶ 51.)

### B.  Procedural History

#### 1.  *Pizarro* Background

Pizarro filed her initial Complaint on April 2, 2023.  (*See* Compl. (Dkt. No. 1, Case No. 23-CV-2751).)  Thereafter, following correspondence regarding consolidating the *Pizarro* and *Koonce* Actions, the details of which are not relevant to resolving the instant Motions, (*see generally* Dkt., Case No. 23-CV-2751), Defendant submitted a pre-motion letter seeking leave to file a motion to dismiss the Complaint on August, 18, 2023, (*see* Letter from Creighton R. Magid, Esq. to Court (Aug. 18, 2023) (Dkt. No. 17, Case No. 23-CV-2751)).  On August 24, 2023, Pizarro filed a response, as well as an Amended Complaint.  (*See* Letter from Charles D. Moore, Esq. to Court (Aug. 24, 2023) (Dkt. No. 22, Case No. 23-CV-2751); *see also* First Am. Compl. (Dkt. No. 21, Case No. 23-CV-2751).)  On September 7, 2023, Defendant filed another pre-motion letter, seeking leave to file the *Pizarro* Motion.  (*See* Letter from Creighton R. Magid, Esq. to Court (Sept. 7, 2023) (Dkt. No. 23, Case No. 23-CV-2751).)  Pizarro filed a response on September 14, 2023.  (*See* Letter from Charles D. Moore, Esq. to Court (Sept. 14, 2023) (Dkt. No. 24, Case No. 23-CV-2751).)  On September 18, 2023, the Court held a pre-motion conference during which it adopted a briefing schedule.  (*See* Order (Dkt. No. 27, Case No. 23-CV-2751).)  Then, on September 22, 2023, Pizarro and Zielinski filed the *Pizarro* SAC, which added Zielinski to the *Pizarro* Action.  (*See Pizarro* SAC.)[5]

---

[5] Zielinski had previously been Plaintiff in a separate Action closely related to the *Pizarro* Action.  (*See generally* Dkt., Case No. 23-CV-6216.)

Pursuant to the briefing schedule adopted by the Court on September 18, 2023, Defendant filed the *Pizarro* Motion on October 4, 2023.  (*See* Dkt. No. 31, Case No. 23-CV-2751; *see also Pizarro* Not. of Mot.; Mem. of Law in Supp. of *Pizarro* Mot. ("Def's *Pizarro* Mem.") (Dkt. No. 33, Case No. 23-CV-2751); Decl. of Creighton R. Magid, Esq. in Supp. of *Pizarro* Mot. ("Magid *Pizarro* Decl.") (Dkt. No. 34, Case No. 23-CV-2751).)  On November 6, 2023, all Plaintiffs—including Koonce—filed their Opposition on the docket for the *Pizarro* Action.  (*See* Pls' Mem. of Law in Opp'n to Mots. ("Pls' Opp'n") (Dkt. No. 35, Case No. 23-CV-2751).)  On November 16, 2023, Defendants filed an omnibus Reply to both Motions.  (*See* Reply Mem. of Law in Supp. of Mots. ("Def's Reply") (Dkt. No. 36, Case No. 23-CV-2751).)

### 2.  *Koonce* Background

The background of the *Koonce* Action, closely mirrors that of the *Pizarro* Action.  On May 24, 2023, Koonce filed her initial Complaint.  (*See* Compl. (Dkt. No. 1, Case No. 23-CV-4323).)  Following the consolidation proceedings alluded to above, (*see generally* Dkt., Case No. 23-CV-4323), Defendant filed a pre-motion letter seeking leave to move to dismiss the Complaint on June 22, 2023, (*see* Letter from Creighton R. Magid, Esq. to Court (Aug. 4, 2023) (Dkt. No. 19, Case No. 23-CV-4323)).  On August 10, 2023, Koonce filed a response, as well as her First Amended Complaint.  (*See* Letter from Charles D. Moore, Esq. to Court (Aug. 10, 2023) (Dkt. No. 21, Case No. 23-CV-4323); *see also Koonce* FAC.)  On August 24, 2023, Defendant filed another pre-motion letter, seeking leave to file the *Koonce* Motion.  (*See* Letter from Creighton R. Magid, Esq. to Court (Aug. 24, 2023) (Dkt. No. 24, Case No. 23-CV-4323).)  Koonce filed a response on August 31, 2023.  (*See* Letter from Charles D. Moore, Esq. to Court (Sept. 14, 2023) (Dkt. No. 25, Case No. 23-CV-4323).)  On September 18, 2023, the Court held a pre-motion conference during which it adopted a briefing schedule.  (*See* Order (Dkt. No. 29, Case No. 23-CV-4323).)

Pursuant to that briefing schedule, Defendant filed the *Koonce* Motion on October 4, 2023.  (*See* Dkt. No. 30, Case No. 23-CV-4323; *see also Koonce* Not. of Mot.; Mem. of Law in Supp. of *Koonce* Mot. ("Def's *Koonce* Mem.") (Dkt. No. 32, Case No. 23-CV-4323); Decl. of Creighton R. Magid, Esq. in Supp. of *Koonce* Mot. ("Magid *Koonce* Decl.") (Dkt. No. 33, Case No. 23-CV-4323).)  As noted, all Plaintiffs filed an omnibus Opposition on the docket for the *Pizarro* Action on November 6, 2023.  (*See* Pls' Opp'n.)  And Defendant filed its omnibus Reply on November 16, 2023.  (*See* Def's Reply; *see also* Dkt. No. 34, Case No. 23-CV-4323 (duplicate copy of Defendant's Reply filed on the docket for the *Koonce* Action).)

## II.  Discussion

### A.  Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of [its] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted).  "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement."  *Id*. (alteration and quotation marks omitted).  Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.

Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, the[]

complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and "draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)).  Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken."  *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (citation and quotation marks omitted); *see also Gamboa v. Regeneron Pharms., Inc.*, — F. Supp. 3d —, 2024 WL 815253, at *3 (S.D.N.Y. Feb. 27, 2024) (same).

B.  Analysis

In the *Pizarro* SAC, Pizarro and Zielinski raise causes of action on behalf of themselves and all others similarly situated for violations of both §§ 349 and 350 of the New York GBL in connection with the labeling of Fireball Malt, arguing that the product's label misled them into believing Fireball Malt contained whiskey.  (*See Pizarro* SAC ¶¶ 75–90.)  And in the *Koonce*

FAC, Koonce likewise asserts claims on behalf of herself and all others similarly situated arising

under §§ 349 and 350 of the New York GBL based on the labeling of the Parrot Bay Malt

products, similarly asserting that the label induced her into believing Parrot Bay Malt contained

rum.  (*See Koonce* FAC ¶¶ 66–87.)[6]

"Section 349 [of the GBL] prohibits 'deceptive acts or practices in the conduct of any

business, trade[,] or commerce,' whereas [§] 350 prohibits 'false advertising in the conduct of

any business, trade[,] or commerce.'"  *Wynn v. Topco Assocs., LLC*, No. 19-CV-11104, 2021

WL 168541, at *2 (S.D.N.Y. Jan. 19, 2021) (alterations omitted) (quoting N.Y. Gen. Bus. Law

§§ 349–50).  "'The standard for recovery under . . . § 350, while specific to false advertising, is

otherwise identical to [§] 349,' and therefore the Court will merge its analysis of the two claims."

*Cosgrove v. Oregon Chai, Inc.*, 520 F. Supp. 3d 562, 575 (S.D.N.Y. 2021) (citation omitted)

(quoting *Goshen v. Mut. Life Ins. Co. of N.Y.*, 774 N.E.2d 1190, 1195, n.1 (N.Y. 2002)); *see also*

*Barreto v. Westbrae Nat., Inc.*, 518 F. Supp. 3d 795, 802 (S.D.N.Y. 2021) (same); *Duran v.*

*Henkel of Am., Inc.*, 450 F. Supp. 3d 337, 346 (S.D.N.Y. 2020) (noting that "courts have found

that the scope of § 350 is as broad as that of § 349 . . . and that its essential elements are the

same" (alteration in original) (citation omitted)).  To state a claim under either section, "a

plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is

---

[6] Although Koonce also raises an unjust enrichment claim, (*see Koonce* FAC ¶¶ 88–96), Defendants point out—and Koonce does not dispute—that she has withdrawn that claim, (*see* Def's *Koonce* Mem. 2 n.2; *see also generally* Pls' Opp'n).  That makes good sense because, where—as here—a plaintiff "fail[s] to explain how [their] unjust enrichment claim is not merely duplicative of [their] other causes of action[,]" courts dismiss such claims.  *Warren v. Coca-Cola Co.*, 670 F. Supp. 3d 72, 89 (S.D.N.Y. 2023) (dismissing an unjust enrichment claim where the plaintiff did not explain how that claim was distinct from her New York GBL, breach of express and implied warranty, Magnuson-Moss Warranty Act, and fraud claims); *see also Anderson v. Unilever U.S., Inc.*, 607 F. Supp. 3d 441, 463 (S.D.N.Y. 2022) (similar); *Cooper v. Anheuser-Busch, LLC*, 553 F. Supp. 3d 83, 115–16 (S.D.N.Y. 2021) (similar).

(2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly

deceptive act or practice." *Wynn*, 2021 WL 168541, at *2 (quoting *Orlander v. Staples, Inc.*, 802

F.3d 289, 300 (2d Cir. 2015)); *see also Newman v. Bayer Corp.*, 695 F. Supp. 3d 469, 477

(S.D.N.Y. 2023*)* (applying the same standard); *Twohig v. Shop-Rite Supermarkets, Inc.*, 519 F.

Supp. 3d 154, 160 (S.D.N.Y. 2021) (same).

       In support of both Motions, Defendant primarily argues that the Fireball Malt and Parrot

Bay Malt labels are not materially misleading and, relatedly, that no reasonable consumer would

be duped into thinking that those products were Fireball Whisky and Parrot Bay Rum, or

otherwise contained distilled spirits.  (*See* Def's *Pizarro* Mem. 6–9; Def's *Koonce* Mem. 5–8.)

In support of the *Koonce* Motion only, Defendant also contends that Koonce did not plausibly

allege any injury.  (*See* Def's *Koonce* Mem. 9–10.)

       The Court will address Defendant's arguments only to the extent necessary to resolve the

instant Motions.

### 1.  Consumer-Oriented Conduct

       Defendant appears to concede—or, at least, does not contest for purposes of the instant

Motions—that its conduct was consumer-orientated.  (*See generally* Def's *Pizarro* Mem.; Def's

*Koonce* Mem.)  "A defendant engages in 'consumer-oriented' activity if [the company's] actions

cause any 'consumer injury or harm to the public interest.'"  *New York v. Feldman*,

210 F. Supp. 2d 294, 301 (S.D.N.Y. 2002) (quoting *Securitron Magnalock Corp. v. Schnabolk*,

65 F.3d 256, 264 (2d Cir. 1995)).  This requirement is liberally construed, *id.*, and "may be

satisfied by showing that the conduct at issue 'potentially affect[s] similarly situated

consumers,'" *Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54, 64 (2d Cir. 2010) (alteration in original)

(quoting *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d

741, 745 (N.Y. 1995)).  Here, Pizarro and Zielinski allege that Defendant "manufactures,

markets, sells, and distributes [Fireball Malt] throughout the United States and the State of New

York[,]" (*Pizarro* SAC ¶ 64), and Koonce similarly alleges that it "manufactures, markets,

advertises, and distributes [Parrot Bay] Malt throughout the United States, including New

York[,]" (*Koonce* FAC ¶ 18).  These allegations are sufficient to satisfy the first element of

Plaintiffs' GBL claims.  *See Newman*, 695 F. Supp. 3d at 478 (finding the allegation that the

defendants "advertise, market, and distribute the [product at issue] to thousands of customers

across the country and in the state of New York" to be sufficient to satisfy the first element of the

plaintiff's GBL claim); *Anderson*, 607 F. Supp. 3d at 451–52 (concluding that the allegation that

the defendant "manufactures, distributes, markets, labels, and sells the [p]roduct [at issue] to

consumers from retail and online stores of third-parties across the country" satisfied the

applicable pleading standard (alteration adopted) (quotation marks omitted)); *see also Karlin v.*

*IVF Am., Inc.*, 712 N.E.2d 662, 665 (N.Y. 1999) (observing that GBL §§ 349 and 350 "apply to

virtually all economic activity, and their application has been correspondingly broad" (footnote

omitted) (collecting cases)); *Sheth v. N.Y. Life Ins. Co.*, 709 N.Y.S.2d 74, 75 (App. Div. 2000)

(noting that the "consumer-oriented" requirement may be satisfied "by a showing that the

practice has a broader impact on the consumer at large").

### 2.  Materially Misleading Conduct

Defendant's principal argument in both Motions is that Plaintiffs cannot state cognizable

claims for violations of New York GBL §§ 349 and 350, because the *Pizarro* SAC and the

*Koonce* FAC "fails plausibly to allege that a significant portion of the consuming public would

be misled by" by the Fireball Malt and Parrot Bay Malt labels.  (*See* Def's *Pizarro* Mem. 6–9;

Def's *Koonce* Mem. 5–8.)

To survive a motion to dismiss, plaintiffs "must do more than plausibly allege that a label might conceivably be misunderstood by some few consumers." *Twohig*, 519 F. Supp. 3d at 160 (internal quotation marks omitted) (quoting *Sarr v. BEF Foods, Inc.*, No. 18-CV-6409, 2020 WL 729883, at *3 (E.D.N.Y. Feb. 13, 2020)). "Instead, plaintiffs must 'plausibly allege that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled.'" *Id.* (quoting *Sarr*, 2020 WL 729883, at *3); *see also Weinstein v. eBay, Inc.*, 819 F. Supp. 2d 219, 228 (S.D.N.Y. 2001) (stating "the applicable legal standard is whether a reasonable consumer, not the least sophisticated consumer, would be misled by [a defendant's] actions"). "While it is possible for a court to decide this question as a matter of law, this inquiry is generally a question of fact not suited for resolution at the motion to dismiss stage." *Duran*, 450 F. Supp. 3d at 346 (citation omitted) (collecting cases). "Notably, whether an interpretation is unreasonable as a matter of law is generally reached at [the motion-to-dismiss] stage *only* where, for instance, a plaintiff's claims as to the impressions that a reasonable consumer might draw are '*patently implausible*' or *unrealistic*." *Eidelman v. Sun Prods. Corp.*, No. 16-CV-3914, 2017 WL 4277187, at *4 (S.D.N.Y. Sept. 25, 2017) (emphases added) (quoting *Stoltz v. Fage Dairy Processing Indus., S.A.*, No. 14-CV-3826, 2015 WL 5579872, at *20 (E.D.N.Y. Sept. 22, 2015)); *see also In re Frito-Lay N. Am. Inc. All Nat. Litig.*, No. 12-MD-2413, 2013 WL 4647512, at *16 (E.D.N.Y. Aug. 29, 2013) (explaining that claims which "border on fantasy" require "dismissal as a matter of law").

Cases dismissing deceptive labeling claims at the motion-to-dismiss stage, therefore, "are exceptions to the norm." *Cooper*, 553 F. Supp. at 95; *see also Kacocha v. Nestle Purina Petcare Co.*, 2016 WL 4367991, at *14 (S.D.N.Y. Aug. 12, 2016) ("[A]mple case law exists allowing § 349 claims over allegedly deceptively labeled consumer goods to progress beyond the motion-

to-dismiss stage, largely based on the view that the question of what might deceive the reasonable consumer is a question of fact."). And those cases dismissing such claims tend to involve unique factual scenarios, such as where: "plaintiffs tr[y] to draw highly specific inferences regarding the source or predominance of a particular flavor or ingredient identified on a label"; "the relevant labeling clearly precluded the possibility of deception"; and/or "the plaintiffs' alleged inference appeared fundamentally incompatible with basic common sense[.]" *See Cooper*, 553 F. Supp. at 95 (collecting cases).

In light of the factual idiosyncrasies underlying each Motion, the Court will address *Pizarro* and *Koonce* in turn.

### a.  Application in *Pizarro*

With regard to the *Pizarro* Action, the Court cannot conclude, as a matter of law, that the Fireball Malt's labeling "would *not* be misleading to a reasonable consumer." *Rivera v. Navient Sols., LLC*, No. 20-CV-1284, 2020 WL 4895698, at *8 (S.D.N.Y. Aug. 19, 2020) (emphasis in original). In other words, Pizarro and Zielinski's claims do not "border on fantasy," *In re Frito-Lay*, 2013 WL 4647512, at *16, and are not "patently implausible," *Stoltz*, 2015 WL 5579872, at *20, so as to require dismissal at this stage of the case. "To the contrary, [they] have cogently explained how reasonable consumers might be misled into thinking that" Fireball Malt was a product containing a distilled spirit—namely, whiskey—rather than just a purely malt-based beverage. *See Cooper*, 553 F. Supp. at 96.[7]

---

[7] This Court is not alone in coming to this conclusion. Courts in the Northern District of California and the Middle District of Florida have recently held—albeit under the analogous laws of the states in which they respectively sit—that plaintiffs have stated plausible deceptive-practices and false-advertising claims based on the labeling of Fireball Malt. *See McKay v. Sazerac Co., Inc.*, No. 23-CV-522, 2023 WL 3549515, at *6–7 (N.D. Cal. May 17, 2023); *see also generally Puig v. Sazerac Co., Inc.*, No. 23-CV-856, 2024 WL 4170254 (M.D. Fla. Sept. 12, 2024).

Indeed, the labels for Fireball Malt and Fireball Whisky are nearly identical. (*See Pizarro* SAC ¶ 8.) *See also supra* Section I.A.1. Beginning with the labels themselves, they reflect the same charred edges with the same exact burn patterns and burn marks, and the labels are also identical colors. (*See Pizarro* SAC ¶ 8.) Both labels prominently place the mark "FIREBALL" at the top in large font and bold, black text, under which a large, red, fire-headed demon—spewing what can only be characterized as a fireball—can be found between the words "RED" and "HOT" in smaller, red font. (*See id.*) Under the demon, both labels say "CINNAMON," though Fireball Whisky includes the word "WHISKY" as well. (*See id.*) And at the bottom of the Fireball Malt label, it stated, in small font:

> MALT BEVERAGE WITH NATURAL WHISKY
> & OTHER FLAVORS AND CARAMEL COLOR

(*Id.* ¶¶ 8, 52.)

Beyond the label, it is also notable that, as alleged, Fireball is "one of the most popular drinks to down—particularly in shot form." (*Id.* ¶ 2 (citation omitted).) In fact, Fireball is purportedly famous for being a *whiskey* that is relatively easy to drink given its sweet, cinnamon flavor. (*See id.* ¶¶ 5, 7, 47.) Further, the Fireball Malt is sold in, among other sizes, mini or nip-sized bottles, which are commonly associated with distilled spirits, such as whiskey. *(See id. ¶¶ 8, 31, 33, 36, 40, 48.)*

Accepting those allegations as true and drawing all reasonable inferences in Pizarro and Zielinski's favor, it is, at the very least, plausible that the Fireball Malt label "misleads consumers into believing [the product] is or contains whiskey." (*See id.* ¶ 54.) Contrary to Defendant's assertion, (*see* Def's *Pizzaro* Mem. 7–8), this Court's decision in *Cooper* supports that conclusion, *see* 553 F. Supp. at 96. There, the plaintiffs sued the defendant under, inter alia, §§ 349 and 350 of the New York GBL, alleging that the defendant was deceptive in connection

with its sale of certain malt beverages with mojito, sangria, rosé, and margarita flavoring, which

it labeled as "SPARKLING CLASSIC COCKTAIL," "SPARKLING SANGRIA COCKTAIL,"

"SPARKLING ROSÉ COCKTAIL," and "SPARKLING MARGARITA," respectively. *Id.* at 96

(emphases and citations omitted). More specifically, because the beverages at issue were, in

fact, purely malt-based, the plaintiffs alleged that those labels were materially misleading

because reasonable consumers would believe that mojito products contain rum, sangria and rosé

products contain wine, and margarita products contain tequila. *Id.* at 90–91, 96. This Court

agreed with the plaintiffs, holding that it was "more than plausible that a reasonable consumer

viewing a package labeled 'SPARKLING MARGARITA' would assume the beverage inside

contained tequila.[,]" and that "[l]ikewise, a reasonable consumer might plausibly assume that

products labeled 'SPARKLING ROSÉ COCKTAIL,' 'SPARKLING SANGRIA COCKTAIL,'

or 'MOJITO FIZZ'/'SPARKLING CLASSIC COCKTAIL[]' contained rosé, sangria, or rum,

respectively." *See id.* at 96. Importantly, that holding was based, in part, on the plain meaning

of "mojito," "sangria," "rosé," and "margarita[,]" as alleged in the operative complaint. *See id.*

So too here. Mindful that, "[i]n determining whether a reasonable consumer would have

been misled by a particular advertisement, context is crucial[,]" *Mantikas v. Kellogg Co.*, 910

F.3d 633, 636 (2d Cir. 2018); *see also Geffner v. Coca-Cola Co.*, 928 F.3d 198, 200 (2d Cir.

2019) (same), the Court notes that Fireball Malt and Fireball Whisky are not sold at the same

locations in New York, (*see Pizarro* SAC ¶ 55). Thus, a consumer could not simply compare the

Fireball Malt and Fireball Whisky labels side-by-side and see that Fireball Malt's label says

"CINNAMON" only, while Fireball Whisky's label says "CINNAMON WHISKY." (*See id.*

¶ 8). Instead, consumers in New York—many of whom do not even known that Fireball Malt is

a distinct product from Fireball Whisky—would see a label that is strongly associated with the

well-known whiskey brand, Fireball, in a type of bottle that is renowned for containing distilled

spirits.  (*See id.* ¶¶ 6, 8, 31, 33, 36, 40, 48.)  Indeed, the label asserts that Fireball Malt is bottled

in Kentucky—a state closely associated with the production of whiskey.  (*See id.* ¶ 52.)

Moreover, the label itself is arguably ambiguous insofar is it states that Fireball Malt is a

"MALT BEVERAGE WITH NATURAL WHISKY[,]" followed on the next line by "& OTHER

FLAVORS AND CARAMEL COLOR."  (*Id.* ¶¶ 8, 52.)[8]  Finally, Defendant's website itself

implicitly recognizes the potential for consumer confusion by including an FAQ response

addressing the following question:  "HOW CAN I TELL THE DIFFERENCE BETWEEN

FIREBALL CINNAMON [i.e., Fireball Malt] AND FIREBALL WHISKY PRODUCTS?"  (*Id.*

¶ 10.)[9]  On this record, the Court cannot say, as a matter of law, that no reasonable consumer

could be misled into believing that Fireball Malt is or contains whiskey.  *See Cooper*, 553 F.

Supp. 3d at 96 (explaining that New York GBL require dismissal where they "border on fantasy"

---

[8] Defendant's argument that "[n]o reasonable consumer would expect the ampersand to
introduce 'other natural flavors' without reference to 'natural whisky'" is not without force.
(Def's Reply 5 n.3.)  But given the small font in which this phrase appears on a label on a small
bottle, not to mention the early stage of this case, the Court will not conclude as a matter of law
that that statement cuts in Defendant's favor.  *See Anderson*, 607 F. Supp. at 452–53 (noting that
"at the motion to dismiss stage, 'where a representation is capable of two possible reasonable
interpretations,' [a c]ourt is not free to reject 'the misleading one simply because there is an
alternative, non-misleading interpretation'" (alterations adopted) (quoting *Fishon v. Peloton
Interactive, Inc.*, No. 19-CV-11711, 2020 WL 6564755, at *7 (S.D.N.Y. Nov. 9, 2020))).

[9] The anecdotes in the *Pizarro* SAC further demonstrate potential consumer confusion as
to whether Fireball Malt contains whiskey.  (*See Pizarro* SAC ¶¶ 28–30 (describing a radio host
who was "was shocked to see a huge Fireball [Malt] display in front of the cash register at a gas
station convenience store[,]" and "wondered if this specific store [was] doing something
they[ weren't] supposed to be doing" (quotation marks omitted)); *see also id.* ¶¶ 31–33 (citing a
similar anecdote where a radio host saw Fireball Malt at a convenience store and asked the
cashier, "[y]ou carry Fireball now[,]" to which she responded, "[y]eah, I guess"); *id.* ¶ 34
(quoting an article that stated: "A friend who peddles booze for a living dropped me a note
describing upset among his client liquor stores because customers think Fireball [] Whisky is
being sold in supermarkets in small bottles for 99 cents." (alteration adopted)).)

or are otherwise "patently implausible" (citations omitted)); *Rivera*, 2020 WL 4895698, at *8

(S.D.N.Y. Aug. 19, 2020) (holding that dismissal under Rule 12(b)(6) was not appropriate where

the court could not conclude "as a matter of law, that [the defendant's] language would *not* be

misleading to a reasonable consumer" (emphasis in original)); *cf. McKay*, 2023 WL 3549515, at

*6 (holding that the plaintiff plausibly alleged that the Fireball Malt's "nearly identical"

packaging and labeling "could affirmatively mislead consumers" because it "insinuat[es] that

Fireball Malt was as strong as Fireball Whisky by packaging it in a 'shot' size," and the label

uses "ambiguous wording in the composition list").

    In short, the Court concludes that Pizarro and Zielinski have plausibly alleged the second

element of their New York GBL claims.[10]

### b.  Application in *Koonce*

    For substantially the same reasons set forth in the preceding Section, the Court likewise

concludes that Koonce has plausibly alleged that the Parrot Bay Malt label "misleads consumers

into believing it is or contains" rum.  (*Koonce* FAC ¶ 40.)

    As the *Koonce* FAC makes clear, the labels for both Parrot Bay Rum and Parrot Bay Malt

are extraordinarily similar.  (*See Koonce* FAC ¶ 36.)  *See also supra* Section I.A.2.  Specifically,

both labels have: the same slightly tattered edge; the same partly cloudy blue sky; the same palm

---

[10] Although Defendant makes arguments regarding the purported rear label of "all but the smallest bottles of Fireball [Malt]," it makes no effort to explain why the Court should consider that material, which is not included or otherwise referenced in the *Pizarro* SAC, at this stage. (*See* Def's *Pizarro* Mem. 3–4.)  *See also Thomas v. Westchester Cnty. Health Care Corp.*, 232 F. Supp. 2d 273, 275 (S.D.N.Y. 2002) ("When considering a motion to dismiss, the Court's review is confined to the pleadings themselves" because "[t]o go beyond the allegations in the Complaint would convert the Rule 12(b)(6) motion into one for summary judgment pursuant to [Rule] 56."); *see also Doe v. County of Rockland*, No. 21-CV-6751, 2023 WL 6199735, at *1 (S.D.N.Y. Sept. 22, 2023) (same).  Thus, the Court will not consider such arguments.
    The Court addresses Defendant's remaining arguments in support of the *Pizarro* Motion below.  *See infra* Section II.B.2.c.

trees; the same beach and tropical ocean backdrop; the same parrot (macaw?); and the same

Parrot Bay mark, front-and-center, in a unique, pirate-esque font.  (*See Koonce* FAC ¶ 36.)

Focusing on the coconut variety of Defendant's Parrot Bay line of products, both the Parrot Bay

Rum and Parrot Bay Malt labels state "COCONUT" in large font beneath the exact same set of

four coconuts (one of which is cracked open) with interspersed palm leaves.  (*See id.*)  And

toward the bottom, both labels have identical designs and patterns, and use a similar font.  (*See

id.*)

Again, in connection with the materially misleading prong of this analysis, "context is

crucial." *Mantikas*, 910 F.3d at 636.  And as with Fireball Malt, New York consumers

considering a Parrot Bay Malt product could plausibly conclude that that product contains rum.

This is so for several reasons, the first of which is how remarkably similar the Parrot Bay Malt

label is to the Parrot Bay Rum label.  (*See Koonce* FAC ¶ 36.)  In addition to that label, Koonce

asserts that Parrot Bay is a well-known *rum* brand.  (*See id.* ¶¶ 2–3, 7.)  Further, Koonce alleges

that Parrot Bay Malt is sold in mini or nip-sized bottles commonly associated with distilled

spirits such as rum.  (*See id.* ¶¶ 32, 34–36, 47.)  In light of that context, the Court, again, cannot

conclude that Koonce's bottom-line assertion that she was duped into purchasing Parrot Bay

Malt, thinking it contained rum, "border[s] on fantasy" or is "patently implausible."  *Cooper*, 553

F. Supp. 3d at 96 (citations omitted).

To be sure, the fact that the label for Parrot Bay Malt expressly indicates that it contains

16% ABV renders this a somewhat closer case as compared to *Pizarro*.  However, that ABV

percentage is placed at the bottom of a label on a small bottle in small font.  (*See Koonce* FAC

¶¶ 36–37.)  Further, although Koonce alleges that "alcohol content is a major component, if not

the driving force, of the decision to purchase an alcoholic beverage[,]" (*id.* ¶ 6), Defendant offers

no argument as to why reasonable New York consumers should be presumed to know the exact

ABV of Parrot Bay Rum, which—as alleged—is on the low end of the ABV spectrum for rum,

at just 21%, (*see id.* ¶ 4–5). Defendant's assertion that no reasonable consumer "would be

misled by the brand name 'Parrot[] Bay' into thinking that a malt beverage clearly labeled as a

malt beverage with only 16% ABV that is only sold in outlets where no spirits are sold is, in fact,

rum" may well be borne out through discovery, (*see* Def's *Koonce* Mem. 5), but at this stage the

Court declines to grant the *Koonce* Motion because, in the Court's view, "the knowledge and

expectations of reasonable consumers purchasing alcoholic beverages in a drug or convenience

store cannot be resolved without surveys, expert testimony, and other evidence of what is

happening in the real world," *Cooper*, 553 F. Supp. 3d at 104 (quotation marks omitted). Put

differently, here—as in most cases—the question of whether Defendant's Parrot Bay Malt

labeling would prove misleading to a reasonable consumer is a question of fact that cannot be

resolved on a motion to dismiss. *See id.* at 96–97 (denying the motion to dismiss because the

plaintiffs plausibly alleged that the labels for defendant's malt beverage products were materially

misleading given that they put front-and-center terms such as "sangria," "rosé," and "margarita,"

which are strongly associated with wine and tequila, respectively); *see also Singleton v. Fifth*

*Generation, Inc.*, No. 15-CV-474, 2016 WL 406295, at *10 (N.D.N.Y. Jan. 12, 2016) (same with

respect to allegedly misleading statement that the defendant's vodka was "handmade"); *Stoltz*,

2015 WL 5579872, at *16–20 (same with respect to allegedly misleading statement that the

defendant's Greek yogurt was "Total 0%" so as to suggest a lack of calories, carbohydrates, and

other qualities); *Silva v. Smucker Nat. Foods, Inc.*, No. 14-CV-6154, 2015 WL 5360022, at *10

(E.D.N.Y. Sept. 14, 2015) (same with respect to allegedly misleading statement that the

defendant's root beer was "natural"); *Koenig v. Boulder Brands, Inc.*, 995 F. Supp. 2d 274, 287–

89 (S.D.N.Y. 2014) (same with respect to allegedly misleading statement that the defendant's milk products were "Fat Free").

In sum, the Court concludes that Koonce has plausibly alleged the second element of her New York GBL claims. The Court next turns to addressing Defendant's various arguments urging the Court to dismiss the *Pizarro* and *Koonce* Actions on the basis that the labels at issue are not materially misleading.

### c. Defendant's Contrary Arguments

Defendant's arguments in support of the materially misleading aspect of both Motions—which are largely duplicative—are unconvincing. (*See generally* Def's *Pizarro* Mem. 6–9; Def's *Koonce* Mem. 5–8; Def's Reply 6–10.)

First, Defendant asserts that the Fireball Malt and Parrot Bay Malt labels are "not misleading" because neither label asserts that Defendant's products contain distilled spirits and, in fact, both labels state that they are "Malt Beverage[s.]" (*See* Def's *Pizarro* Mem. 6–7; Def's *Koonce* Mem. 5–6; *see also Pizarro* SAC ¶ 52; *Koonce* FAC ¶ 37.) However, as this Court explained in *Cooper*, "courts [are] hesitant to dismiss deceptive labeling claims on the basis of small-print or easy-to-miss disclosures." 553 F. Supp. 3d at 107; *see Stoltz*, 2015 WL 5579872, at *16 ("[T]he significance of a disclaimer depends upon factors such as the font size and placement of the disclaimer as well as the relative emphasis placed on the disclaimer and the allegedly misleading statement."); *see also Delgado v. Ocwen Loan Servicing, LLC*, No. 13-CV-4427, 2014 WL 4773991, at *9 (E.D.N.Y. Sept.24, 2014) (holding that disclosures were "not conspicuous or prominent enough to necessarily cure" alleged misrepresentation and declining to grant dismissal on that basis). As explained above, in the context of the Fireball Malt and Parrot Bay Malt labels themselves, the "Malt Beverage" disclosures are printed in very small font and

are certainly overshadowed by the elements of the label that mirror the Fireball Whisky and Parrot Bay Rum labels.  *See supra* Sections II.B.2.a–b; *see also Stoltz*, 2015 WL 5579872, at *14–19 (declining to conclude, as a matter of law, that no reasonable consumer would be misled by a product's prominent "Total 0%" representation, despite the presence of (i) clarifying language ("nonfat") indicating that "Total 0%" referred only to fat content, and (2) a nutritional panel that contained accurate information as to the product's calorie, fat, carbohydrate, and sugar content); *Koenig*, 995 F.Supp.2d at 287–88 (holding that a disclosure did not, as a matter of law, cure the alleged misrepresentation because "a reasonable consumer might . . . focus on the more prominent portion of the product label that touts the product as 'Fat Free Milk and Omega–3s,' and overlook the smaller text that discloses the fat content on the front of the carton or the nutrition label"); *cf. Danone, US, LLC v. Chobani, LLC*, 362 F. Supp. 3d 109, 123 (S.D.N.Y. 2019) ("[A] parent walking down the dairy aisle in a grocery store, possibly with a child or two in tow, is not likely to study with great diligence the contents of a complicated product package, searching for and making sense of fine-print disclosures . . . .  Nor does the law expect this of the reasonable consumer.").  *Cooper* is, again, instructive because there, this Court determined that small-print disclosures did not automatically render deception implausible as a matter of law where the products at issue disclosed that they were malt beverages—not distilled spirits—"in a small font statement on the bottom panel of the packaging."  *Cooper*, 553 F. Supp. 3d at 91, 105–08 (quotation marks omitted).  Thus, because "reasonable consumers should not have to consult small-print or otherwise obscure disclosures to correct a misleading impression created by prominent representations on the front of a box," the Court is not persuaded by Defendant's argument that the labels at issue are not misleading.  *Cooper*, 553 F. Supp. 3d at 107–08 (citing, inter alia, *Mantikas*, 910 F.3d at 637); *cf. McKay*, 2023 WL 3549515, at *7 (noting—in

connection with the Fireball Malt label—that "it is [] not clear that consumers would carefully scrutinize the tiny print of 'Malt Beverage' . . . in light of the other flashier language and design of the packaging").

Next, Defendant's reliance on a hodgepodge of cases for the proposition that a "reasonable consumer is presumed to have read the label" does nothing to change the Court's analysis.  (*See* Def's *Pizarro* Mem. 7; Def's *Koonce* Mem. 5–6; *see also* Def's Reply 7.)  For starters, Defendant relies on the district court decision in *Richardson v. Edgewell Personal Care, LLC*, but that decision was vacated and remanded by the Second Circuit shortly after Defendant filed its opening brief.  *See* 653 F. Supp. 3d 67 (S.D.N.Y. 2023), *vacated and remanded*, No. 23-128, 2023 WL 7130940 (2d Cir. Oct. 30, 2023).  The Second Circuit specifically disagreed with the lower court's holding on the plaintiff's New York GBL claims, explaining that the plaintiff *had* plausibly alleged that "the 'Reef Friendly*' front label [of the sunscreen products at issue] could [] mislead a reasonable consumer into thinking the products contain no reef-harming ingredients[,]" even though there was a "back-label disclaimer" because that disclaimer—which said the sunscreen did not contain two specific reef-harming ingredients—"[made] no mention of the four other reef-harming ingredients found in the products."  2023 WL 7130940, at *2 ("Such a disclaimer cannot be seen as 'clarifying language' that may 'defeat a claim of deception.'" (quoting *Fink*, 714 F.3d at 742)).  For its part, *Davis v. Hain Celestial Group, Inc*, 297 F. Supp. 3d 327, 334 (E.D.N.Y. 2018), is distinguishable.  In *Davis*, the plaintiff alleged that labels for "cold pressed" juice were misleading because they "create[d] the impression that the juice ha[d] not been processed after being cold pressed when in fact it has undergone [subsequent] processing in the form of high pressure pascalization[,]" which—notably—"[did] not involve heat."  *See id.* at 333–34 (quotation marks and citation omitted).  The *Davis* court held that the

plaintiff failed to state a plausible New York GBL claim on that theory because "[the] defendants' description of the juice as 'cold pressed' [was] accurate"  *Id.* at 335 ("'Cold pressed' does not cease to be a truthful moniker for the juice simply because there were subsequent steps in the juice's production process [that did not involve heat]."); *see also id.* at 336 (denying the defendants' motion to dismiss the plaintiff's New York GBL claims with respect to alternative theories that the juice labels were misleading).  The Fireball Malt and Parrot Bay Malt labels at issue here are unlike those at issue in *Davis* because, as alleged, rather than being plainly "accurate," they were ambiguous as to whether Defendant's products contain distilled spirits.  *See supra* Sections II.B.2.a–b.  Lastly, this Court's opinion in *Gordon v. Target Corp.*, No. 20-CV-9589, 2022 WL 836773 (S.D.N.Y. Mar. 18, 2022), is entirely inapposite.  There, this Court found that the plaintiff "fail[ed] to identify a single 'specific advertisement or public pronouncement' on which she relied in purchasing the [p]roduct," which was "fatal to her claims."  *Id.* at *13.  That simply is not the case in either the *Pizarro* Action or the *Koonce* Action, where all Plaintiffs have obviously identified Defendant's labels as the focus of the claims.

Finally, Defendant contends that "the locations where [Fireball Malt and Parrot Bay Malt] are sold[, e.g., gas stations and convenience stores,] make[] clear to all reasonable consumers that the product[s are] not [distilled spirits."  (Def's *Pizarro* Mem. 8–9; Def's *Koonce* Mem. 7–8.)  In support of that contention, Defendant relies heavily on *Warren*, where the court dismissed the plaintiff's New York GBL claims and noted—in dicta—that, "[had the plaintiff] lived in New York for any length of time, she would know that cocktails containing hard liquor are not and cannot be sold in grocery stores."  670 F. Supp. 3d at 83 & n.6.  As an initial matter, this Court has come out the other way in connection with this very argument, and the Court hews

to that conclusion.  Specifically, in *Cooper*, the Court explained that, although "reasonable consumers do not lack common sense," 553 F. Supp. 3d at 104 (alterations adopted) (ultimately quoting *Daniel*, 287 F. Supp. 3d at 193):

> [A]t this stage of the case, the Court may not resolve questions regarding "the background knowledge, experience[,] and understanding of reasonable consumers" as a matter of law, *Stoltz*, 2015 WL 5579872, at *19 (rejecting a similar argument based on customers' alleged background knowledge regarding nutritional labeling). There is good reason for this principle:  "A federal trial judge, with a background and experience unlike that of most consumers, is hardly in a position to declare" that, because he or she knows that . . . hard spirits may not be purchased in a drug or convenience store, "all [customers] must appreciate [that fact] as well."  *See Verizon Directories Corp. v. Yellow Book USA, Inc.*, 309 F. Supp. 2d 401, 407 (E.D.N.Y. 2004); *see also Rivera*, 2020 WL 4895698, at *7 ("In determining whether an act is 'materially misleading,' the reasonable consumer is not held to the same standard as a lawyer trained to make fine distinctions reading a bond indenture or a regulation.").
>
> [. . .]
>
> The discrepancy [here] is between Plaintiffs' expectations—that they could purchase . . . distilled liquor at a [grocery store] or [pharmacy]—and the reality that, under New York law, such purchases are outlawed.  To find that reasonable consumers would not countenance this discrepancy, the Court would have to impute to these consumers a threshold background knowledge regarding New York's alcohol laws.  . . . [T]he Court may not do so at this stage in the case.

*Id.*[11]

Beyond that, *Warren* is otherwise distinguishable from the *Pizarro* Action and the *Koonce* Action, and it certainly does not compel a different result here.  In *Warren*—which

---

[11] On Reply, Defendant suggests that Plaintiffs' allegations belie their claims because both the *Pizarro* SAC and the *Koonce* FAC "allege that grocery stores and convenience stores in New York can sell malt beverages and beer, but cannot sell distilled spirits" and "emphasize repeatedly that consumers in New York . . . are well aware that spirits can only be sold in liquor stores."  (Def's Reply 8–9.)  The Court does not buy that obtuse argument, however, because, at most, Plaintiffs' allegations suggest that *some* people are aware of—or think they understand— New York's liquor laws, but they certainly do *not* assert, or even suggest, that such laws ought to be within the ken of reasonable consumers in New York as a matter of law.  (*See Pizarro* SAC ¶¶ 16–18, 28–33, 36–37, 43; *Koonce* FAC ¶¶ 22–27, 41.)

concerned a "margarita hard seltzer" product—the plaintiff alleged, among other things, that the label for the product was misleading because the word "margarita" and the word "hard" in "hard seltzer," along with pictures of agave plants, misled reasonable consumers into thinking that the product contained tequila. 670 F. Supp. 3d at 81. As relevant here, the *Warren* court granted the defendant's motion to dismiss the plaintiff's New York GBL claims because "the [p]roduct's label [did] not use the word '[m]argarita' in a vacuum"; instead, the use of that word alongside "'[h]ard [s]eltzer' [was] critical and fatal to [the p]laintiff's claim." *Id.* Specifically, the Court reasoned that—taking into account the relevant context—"hard seltzer is a category of alcoholic beverages that contain carbonated water, alcohol, and—in most cases fruit flavors, that have enjoyed skyrocketing popularity in the United States, which reasonable consumers would recognize as a product distinct from [distilled-spirit-containing] cocktails like margaritas." *Id.* at 82 (quotation marks and citation omitted). Here, by contrast and as noted above, the Fireball Malt and Parrot Bay Malt labels do not contain *prominently placed* words or phrases that so clearly remove all ambiguity and make clear that Defendant's products do not contain distilled spirits. *See supra* Sections II.B.2.a–b.[12]

---

[12] In its opening briefs, Defendant suggests that the fact that its Fireball Malt and Parrot Bay Malt labels received Certificates of Label Approval ("COLAs") from the U.S. Treasury Department's Alcohol and Tobacco Tax and Trade Bureau ("TTB") means that they cannot be misleading. (*See* Def's *Pizarro* Mem. 10; Def's *Koonce* Mem. 8; *see also* Magid *Pizarro* Decl. Ex. A (Defendant's Fireball Malt TTB COLA) (Dkt. No. 34-1, Case No. 23-CV-2751); Magid *Koonce* Decl. Ex. A (Defendant's Parrot Bay Malt TTB COLA) (Dkt. No. 33-1, Case No. 23-CV-4323).) But, again, Defendant makes no argument whatsoever as to why the Court should consider the COLA at this stage of the case, and the Court will not manufacture such arguments on its behalf. And, even if the Court were to consider the existence of the COLA, Defendant cites no authority supporting the proposition that TTB COLAs matter for purposes of claims arising under New York's GBL. *See Singleton*, 2016 WL 406295, at *8 & n.13 (noting that "the COLA application form states that the issuance of a certificate does not relieve [the d]efendant from liability for violations of the Federal Alcohol Administrative Act . . . , which itself prohibits false and misleading labeling, . . . suggesting that TTB approval is not intended to carry pre-emptive weight").

The Court therefore reiterates—all Plaintiffs have adequately pled the second element of their GBL claims.[13]

### 3.  Injury

Finally, Defendant asserts the Koonce has not adequately alleged injury in connection with her GBL claims.  (*See* Def's *Koonce* Mem. 9–10; Def's Reply 11–13.)[14]

"An actual injury claim under [§§] 349 and 350 typically requires a plaintiff to allege that, on account of a materially misleading practice, [he or] she purchased a product and did not receive the full value of [his or] her purchase." *Duran*, 450 F. Supp. 3d at 350 (alterations omitted) (quoting *Daniel v. Mondelez Int'l, Inc.*, 287 F. Supp. 3d 177, 195 (E.D.N.Y. 2018)).  "A plaintiff can show this injury by alleging 'an overpayment, or a price premium, whereby a plaintiff pays more than she would have but for the deceptive practice.'" *Id.* (quoting *Izquierdo v. Mondelez Int'l Inc.*, No. 16-CV-4697, 2016 WL 6459832, at *7 (S.D.N.Y. Oct. 26, 2017)).  However, "[t]o allege injury under a price premium theory, a plaintiff must allege not only that [the] defendants charged a price premium, but also that there is a connection between the misrepresentation and any harm from, or failure of, the product." *Id.* (quotation marks omitted);

---

[13] Given its holding on the materially misleading element of Plaintiffs' New York GBL claims, the Court need not reach Defendant's arguments regarding Plaintiffs' allegations that certain federal regulations support their claims.  (*See* Def's *Pizarro* Mem. 9–10; Def's *Koonce* Mem. 8; *see also Pizarro* SAC ¶¶ 57–60; *Koonce* FAC ¶¶ 43–46.)  Plaintiffs make clear that they are "not bringing claims under the [TTB's regulations], but point[] to th[o]se regulations only to support allegations that a reasonable consumer would be deceived by Defendant's labeling of [Defendant's p]roducts." (Pls' Opp'n 20 (alteration adopted) (citation omitted).)  In concluding that Plaintiffs have adequately alleged materially misleading representations, the Court has *not* relied on Plaintiffs' assertions regarding those regulations.  (*See Pizarro* SAC ¶¶ 57–60; *Koonce* FAC ¶¶ 43–46.)

[14] To be clear, Defendant does not argue that Pizarro and Zielinski have failed to plausibly allege that they suffered an injury as a result of its alleged deceptive acts and practices in the *Pizarro* SAC.  (*See generally* Def's *Pizarro* Mem.; Def's Reply.)

*see also Sabatano v. Iovate Health Scis. USA Inc.*, No. 19-CV-8924, 2020 WL 3415252, at \*3 (S.D.N.Y. June 22, 2020) ("A plaintiff must also demonstrate reliance, which typically means he must point to a specific advertisement or public pronouncement upon which the consumer relied." (citation omitted)); *Horowitz v. Stryker Corp.*, 613 F. Supp. 2d 271, 288 (E.D.N.Y. 2009) ("In order to make a claim under [GBL § 350], a plaintiff must plead reliance on a false advertisement at the time the product was purchased." (citing *Andrew Strishak & Assocs., P.C. v. Hewlett Packard Co.*, 752 N.Y.S.2d 400, 403 (App. Div. 2002))).  Typically, a plaintiff makes this allegation by asserting that a particular product was marketed as having a special quality, that the marketing enabled the company to charge a premium for the product, and that the plaintiff paid this premium and later discovered that the product "did not, in fact, have the marketed quality."  *Duran*, 450 F. Supp. 3d at 350 (collecting cases).

In her FAC, Koonce alleges that she "suffered injury in the form of the purchase price" and that, "had she known she was not buying real rum, she would not have purchased [Parrot Bay Malt] at all."  (*Koonce* FAC ¶ 11.)  Further, Koonce asserts that she was injured "by paying a premium price for [Parrot Bay Malt p]roducts over competing product[s] not masquerading as distilled liquor."  (*Id.* ¶¶ 47–49; *see also id.* ¶ 55 ("Plaintiff paid more for [Parrot Bay] Malt than she would have had she known the representations and omissions were false and misleading. Alternatively, had Plaintiff known the representations and omissions were false and misleading, she would not have purchased it.").)  At this early stage of the case, these allegations, taken together, more than suffice to allege a price premium theory of injury.  *See Hawkins v. Coca-Cola Co.*, 654 F. Supp. 3d 290, 301 (S.D.N.Y. 2023) (finding that the allegation that the plaintiff "would not have purchased the [p]roduct [at issue] if she knew the [defendant's] representations and omissions were false and misleading or would have paid less for it" sufficed to plead injury

in a case involving GBL claims); *Cooper*, 553 F. Supp. 3d at 109–10 (concluding that the plaintiffs sufficiently alleged injury in connection with their GBL claims where they alleged that they paid more for the products at issue because they believed they contained distilled spirits and that, had they known the products did not contain distilled spirits, "they would have paid less for the Products or would not have purchased them at all"); *see also Fishon*, 2020 WL 6564755, at *10–11 (allegations that the plaintiffs "would not have purchased the [product], or would not have purchased it on the same terms, [had] they kn[o]w[n] the truth," were sufficient to survive dismissal, because "[n]o more is necessary at this stage"); *Duran*, 450 F. Supp. 3d at 351 (finding that the plaintiff adequately pled a price premium theory of injury where he alleged that he and other customers "paid full price for the [p]roduct but received something inferior to what [the defendant] had promised, and that, had [the plaintiff] known that the [p]roduct [was inferior], he would not have purchased the [p]roduct, or would have only paid significantly less for it" (citations omitted)); *Kacocha*, 2016 WL 4367991, at *14 (allegation that the plaintiff "would not have paid the premium price he paid" for the product had he "known the truth" was sufficient to state injury based on price premium theory (citation and quotation marks omitted)); *Singleton*, 2016 WL 406295, at *10 (finding that the plaintiff stated a claim under § 349 where he alleged that, had he "known 'the truth,'" he "would not have bought the vodka, or would have paid less for it" (footnote and quotation marks omitted)).

In its papers, Defendant does not engage with any cases along the lines of those cited above and, indeed, it scarcely cites any cases at all, much less any on-point case law to the contrary. (*See* Def's *Koonce* Mem. 9–10; Def's Reply 11–13.) At most, Defendant argues that, because Koonce purchased Parrot Bay Malt products "multiple times" over a multi-year period, it "simply defies credulity to assert that [she] 'would not have purchased' [those products] had

she known of the product[s'] alcohol content." (Def's *Koonce* Mem. 9–10 (quoting *Koonce* FAC ¶¶ 16, 55).)  But that argument—which, when boiled down, equates to Defendant asserting that Koonce's allegations lack merit—is unavailing at this juncture.  Accepting Koonce's factual allegations as true, *see Erickson*, 551 U.S. at 94, and drawing all reasonable inferences in her favor, *see Daniel*, 992 F. Supp. 2d at 304 n.1—as the Court must at the motion-to-dismiss stage—for the reasons state above, Koonce has plausibly alleged that, "on account of [the Parrot Bay Malt label], she purchased a product and did not receive the full value of her purchase[,]" *Duran*, 450 F. Supp. 3d at 350 (alterations omitted) (citation omitted).

*              *              *

To sum up, the Court concludes that all Plaintiffs have adequately pled each element of their claims under §§ 349–50 of the New York GBL.  These claims therefore survive Defendant's Motions.

### III.  Conclusion

For the foregoing reasons, the Court denies Defendant's Motions.  The Court will hold a telephonic conference in both cases on October 24, 2024, at 2:00 PM ET.

The Clerk of Court is respectfully directed to terminate the pending Motions.  (*See* Dkt. No. 32, Case No. 23-CV-2751; Dkt. No. 31, Case No. 23-CV-4323.)

SO ORDERED.

Dated:    September 25, 2024
        White Plains, New York

                                    KENNETH M. KARAS
                              United States District Judge