# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

SHARON PIZARRO and LARRY
ZIELINSKI, *individually on behalf of
themselves and all others similarly situated*,

                            Plaintiffs,

        – against –

SAZERAC COMPANY, INC.,

                            Defendant.

No. 7:23-cv-02751-KMK

**MEMORANDUM OF LAW IN SUPPORT
OF PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION**

## <u>REDACTED</u>

**CONFIDENTIAL – CONTAINS INFORMATION PRODUCED IN DISCOVERY MARKED**

**AS CONFIDENTIAL AND SUBJECT TO A PROTECTIVE ORDER**

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................. i

TABLE OF AUTHORITIES........................................................................................... ii

INTRODUCTION ........................................................................................................... 1

SUMMARY OF THE COMMON CLASSWIDE EVIDENCE ...................................... 2

    A.   Defendant Saw an Opportunity to Skirt the Law and Get its Distilled Products into Retail Locations Where they are Normally Prohibited. ........................................................ 2

    B.   The Packaging of Fireball Malt is Materially Indistinguishable from Fireball Whisky.... 2

    C.   Reasonable Consumers Are Deceived Because of Fireball Malt's Packaging. ................. 4

    D.   Consumers Paid a Premium Price for Fireball Malt. ......................................................... 7

THE PROPOSED CLASS OF FIREBALL MALT CONSUMERS IS CLEARLY DEFINED..... 8

LEGAL STANDARD ...................................................................................................... 9

ARGUMENT ................................................................................................................... 9

    A.   The Class Satisfies Federal Rule of Civil Procedure 23(a).............................................. 9

        1.   *Numerosity is Satisfied*................................................................................................ 10

        2.   *Commonality is Satisfied*............................................................................................11

            a.   *Legal Standard for GBL Claims* ...........................................................................11

            b.   *Defendant's Conduct is Consumer Oriented*..........................................................11

            c.   *Reasonable Consumers Were Likely to Be Misled* ................................................ 12

            d.   *There Exists a Common Method for Calculating Damages* .................................... 14

        3.   *Typicality is Satisfied.* ................................................................................................ 16

        4.   *Adequacy is Satisfied.* ............................................................................................... 17

    B.   The Class Satisfies Federal Rule of Civil Procedure 23(b)(3)........................................ 18

        1.   *Predominance is Satisfied.* ........................................................................................ 18

        2.   *Superiority is Satisfied.* ............................................................................................. 19

CONCLUSION............................................................................................................... 20

CERTIFICATE OF COMPLIANCE.............................................................................. 21

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## <u>CASES</u>

*AmchemProds., Inc. v. Windsor,*
  521 U.S. 591 (1997) ........................................................................................ 10

*Amgen Inc. v. Conn. Ret. Plans. & Tr. Funds,*
  568 U.S. 455 (2013) .................................................................................. 17, 24

*Carriuolo v. General Motors Co.,*
  823 F.3d 977 (11th Cir. 2016) ....................................................................... 22

*Comcast Corp. v. Behrend,*
  569 U.S. 27 (2013) .......................................................................................... 20

*Cortigiano v. Oceanview Manor Home for Adults,*
  227 F.R.D. 194 (E.D.N.Y. 2005) .................................................................. 12

*Denney v. Deutsche Bank AG,*
  443 F.3d 253 (2d Cir. 2006) .......................................................................... 23

*Ebin v. Kangadis Food Inc.,*
  297 F.R.D. 561 (S.D.N.Y. 2014) .................................................................. 25

*Fogarazzao v. Lehman Bros., Inc.,*
  232 F.R.D. 176 (S.D.N.Y. 2005) .................................................................. 22

*German v. Fed. Home Loan Mortg. Corp.,*
  885 F. Supp. 537 (S.D.N.Y. 1995) ............................................................... 14

*Goldemberg v. Johnson & Johnson,*
  317 F.R.D. 374 (S.D.N.Y. 2016) .................................................................. 25

*Gorat v. Capala Bros., Inc.,*
  257 F.R.D. 353 (E.D.N.Y. 2009) ...................................................................11

*In re Gen. Motors LLC Ignition Switch Litig.,*
  407 F. Supp. 3d 212 (S.D.N.Y. 2019) .......................................................... 20

*In re Literary Works in Elec. Databases Copyright Litig.,*
  654 F.3d 242 (2d Cir. 2011) .......................................................................... 23

*In re Petrobras,*
  *Sec.*, 862 F.3d 250 (2d Cir. 2017) ............................................................. 9, 13

*In re Scotts EZ Seed Litig.*,
   304 F.R.D. 397 (S.D.N.Y. 2015)..................................................................25

*In Re Visa Check / MasterMoney Antitrust Litig.*,
   280 F.3d 124 (2d Cir. 2001) ......................................................................10

*In re Vitamin C Antitrust Litig.*,
   279 F.R.D. 90 (E.D.N.Y. 2012)..................................................................13

*Jensen v. Cablevision Sys. Corp.*,
   372 F. Supp. 3d 95 (E.D.N.Y. 2019) ..........................................................13

*Koch v. Acker, Merrall & Condit Co.*,
   967 N.E.2d 675 (N.Y. 2012) ......................................................................16

*Kurtz v. Kimberly-Clark Corp.*,
   321 F.R.D. 482 (E.D.N.Y. 2017)..........................................................21, 25

*Marchak v. JPMorgan Chase & Co.*,
   84 F. Supp. 3d 197 (E.D.N.Y. 2015) ..........................................................24

*Mariso A. v. Giuliani*,
   126 F.3d 372 (2d Cir. 1997) ..................................................................11, 12

*Moore v. PaineWebber, Inc.*,
   306 F.3d 1247 (2d Cir. 2002) ....................................................................24

*Nicholson v. Williams*,
   205 F.R.D. 92 (E.D.N.Y. 2001)..................................................................14

*Orlander v. Staples, Inc.*,
   802 F.3d 289 (2d Cir. 2015) ................................................................15, 21

*Phillips Petroleum Co. v. Shutts*,
   472 U.S. 797 (1985)....................................................................................10

*Price v. L'Oreal USA, Inc.*,
   No. 17-614, 2018 WL 3869896 (S.D.N.Y. Aug. 15, 2018)........................21

*Robidoux v. Celani*,
   987 F.2d 931 (2d Cir. 1993) ......................................................................22

*Seijas v. Republic of Argentina*,
   606 F.3d 53 (2d Cir. 2010) ........................................................................25

*Serv. LLC v. Applied Underwriters Captive Risk Assurance Co.*,
   239 F. Supp. 3d 761 (S.D.N.Y. 2017) ........................................................16

*Sharpe v. A&W Concentrate Co.*,
 No. 19-768, 2021 WL 3721392 (E.D.N.Y. July 23, 2021) ................................................. passim

*Sykes v. Mel S. Harris & Assoc.*,
 780 F.3d 70 (2d Cir. 2015) .......................................................................................... 24

*Wal-Mart Stores, Inc. v. Dukes*,
 131 S. Ct. 2541 (2011) .................................................................................................11

## **STATUTES**

New York General Business Law ("GBL") §§ 349 and 350 ........................................................ 1

## **RULES**

Federal Rule of Civil Procedure 23 ....................................................................................11, 12
Federal Rule of Civil Procedure 23(a) ..............................................................................11, 12, 23
Federal Rule of Civil Procedure 23(a)(1) ................................................................................ 13
Federal Rule of Civil Procedure 23(a)(3) ................................................................................ 22
Federal Rule of Civil Procedure 23(a)(4) ................................................................................ 23
Federal Rule of Civil Procedure 23(b)(3) ......................................................................... 12, 23, 25

## INTRODUCTION

Defendant Sazerac Company, Inc. ("Defendant" or "Sazerac"), manufactures, markets, and sells whisky under the brand name Fireball ("Fireball Whisky"). Defendant seeks to expand its market to generate more profits. However, due to the liquor laws of many states, Fireball Whisky can only be sold through retailers with liquor licensing. To get around these liquor laws, and to make the product available for sale at any retailer that could sell beer or wine (*e.g.*, convenience stores, grocery stores, mass merchandisers), Defendant created a malt version of their Fireball ("Fireball Malt" or the "Products"). Unlike Fireball Whisky, Fireball Malt does not contain whisky or distilled spirits. Nevertheless, Defendant mirrored the designed elements on the packaging so that the two versions are nearly indistinguishable. They use the same name, color scheme, themes, fonts, symbols and spacing, and tag lines. This predictably resulted in consumer confusion and deception; consumers believed they were buying Fireball Whisky when they were, in fact, buying Fireball Malt. ██████████████████████████████████████████████████████

██████████████████████████████████

Sazerac violates New York General Business Law ("GBL") §§ 349 and 350 because it leverages consumers' demand for "convenience," consumers' familiarity with prolific brands such as Fireball, and consumers' inability to purchase spirits (*e.g.*, whisky) at numerous stores in New York to sell them "malt" products that are not the Fireball Whisky product consumers expect. The reasonable consumers of New York are materially misled by Sazerac's deception. This action seeks to distill the truth of Sazerac's deceptive scheme and certify a class of consumers who purchased mislabeled Sazerac Products.

Accordingly, the proposed Class should now be certified.

## SUMMARY OF THE COMMON CLASSWIDE EVIDENCE

**A. Defendant Saw an Opportunity to Skirt the Law and Get its Distilled Products into Retail Locations Where they are Normally Prohibited.**

New York state liquor laws prevent Defendant from selling Fireball Whisky in all but a few locations. To get around these restrictions and further profit, Defendant exploited its consumer base's loyalty for its branding and created Fireball Malt, which does not contain whisky or any distilled spirits. *See* Declaration of Charles D. Moore ("Moore Decl."), Ex. 1, 53:2-14. In its own words,



Ex. 2 at 1.

Ex. 4 (emphasis in original).

**B. The Packaging of Fireball Malt is Materially Indistinguishable from Fireball Whisky.**

The only way Defendant's scheme works is if consumers cannot recognize the difference between Fireball Malt and Fireball Whisky. Defendant admits that the Fireball malt and whisky

products share certain branding elements, including the red cap, Fireball brand, dragon logo, and that the word "cinnamon" appears on both labels. *See* Answer to SAC (ECF No. 39), ¶¶ 8, 47; Exs. 5-10. But it went further, Defendant used:

- The same color scheme, including the red lid;
- The same bottle shape;
- The same bottle size;
- The same name "Fireball";
- The same dragon logo;
- The same "Red Hot" tagline;
- The same "Cinnamon" statement;
- The same scorched label;
- The same font; and
- The same color liquid.



000079

3

Ex. 11 (left side is Fireball Malt while right side is Fireball Whisky); *compare* Exs. 5-7 (Fireball Malt labels used in New York) *with* Exs. 8-10 (Fireball Whisky labels for similar size bottles during the same time period); *see also* Exs.  Ex. 12 (███████████████████████████████████████████████████████████ ████████████████).

According to Defendant, there are two "key differences" between the Fireball Whisky and Fireball Malt labels—███████████████████████████████████████████████████████ ███████. Ex. 13 at 1-2. But Defendant admitted that Fireball Malt is not available in retail locations that sell Fireball Whisky. *See* Answer, ¶ 55. Thus, even if they so desire, consumers are not able to conduct side-by-side comparisons of the labels to identify the minute differences without purchasing one or the other product and taking it to a different location.

Defendant went to great pains to avoid calling out any statement that might differentiate Fireball Malt from Fireball Whisky. For example, ███████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ Ex. 28 ███████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████

C.  **Reasonable Consumers Are Deceived Because of Fireball Malt's Packaging.**

The result of making Fireball Malt indistinguishable from Fireball Whisky—and the basis of this lawsuit—is that consumer deception abounds between the products.

The expert report by Dr. Andrea Lynn Matthews ("Matthews Report") shows 66% of consumers believe Fireball Malt contains distilled spirits (i.e. whisky). *See* Matthews Expert Report, ¶¶ 32, 36, 37 *see also* ¶¶ 161-163. In fact, the Matthews Report:

> . . . . concluded that a substantial percentage of individuals who see the label for the Defendant's Product believe that the beverage contains distilled spirits, both for individuals who have and who have not purchased Fireball products or distilled spirits in the past year. Further, we conclude that the use of a "Fireball" branded label significantly increases the likelihood that consumers believe that a given beverage contains distilled spirits.

*Id.* ¶ 61.

The Matthews Report also found that:

> Overall, the survey indicates that over sixty percent of the target market for Fireball Cinnamon malt-based alcohol mini bottles believes that the type of beverage contained in these mini-bottle beverages is distilled spirits.

*Id.* ¶ 161.

However, for Defendant, consumer deception is cause for a toast.



---

[1] With this information in its hands, it raises the very serious question of how Defendant could honestly move this Court to dismiss on the grounds that "no reasonable consumer" could be deceived by the Product. *See* Def. Mem. Mot. Dismiss, ECF No. 33 at 6-9.

███████████████████████████████████████████████

██████████████████████████████ Ex. 17 at 1-2.

██████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████████ Ex.

18 at 1.

███████████████████████████████████████

██████████████████████████████ *See e.g.* ████ .

██████████████████████████████████████

████████████████████████████████ .

After receiving pushback from liquor retailers in New York, Defendant internal documents

reveal that:



Ex. 21 at 5 (emphasis added).

██████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████



Despite this known consumer confusion, internal documents reveal Defendant made no effort to clarify the label. ████████████████████

Ex. 25 at 11.

In response, Mark Brown—former President and CEO—stated, ████████████████
████████████████████ *Id.*

████████████████ *Id.* at 9.

Despite all this, Defendant never changed the label. Ex. 26, Rog No. 11.

**D.  Consumers Paid a Premium Price for Fireball Malt.**

As a result of Defendant's deceptive scheme, consumers paid a premium price for the Products. As stated in his expert report ("Ingersoll Report"), Dr. William Robert Ingersoll conducted a choice-based conjoint analysis. Dr. Ingersoll found that 25.2% of the Product's retail price is attributable to the deceptive packaging. *See* Ingersoll Report ¶¶ 7, 94-95, 102, 103. Stated

differently, "purchasers faced a market price that should have been at least 25.2% lower had the deceptive label not been used." *Id.* at 96.

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

█████████████████████████

## THE PROPOSED CLASS OF FIREBALL MALT CONSUMERS
## IS CLEARLY DEFINED

As an initial matter, Plaintiffs' proposed Class is ascertainable. The Second Circuit clarified the test for ascertainability in *Petrobras*, where it held that ascertainability only requires a class to be "defined using objective criteria that establish a membership with definite boundaries." *In re Petrobras Sec.*, 862 F.3d 250, at 257, 264–65 (2d Cir. 2017). "This modest threshold requirement will only preclude certification if a proposed class definition is indeterminate in some fundamental way." *Id.* at 269. The Court also expressly "decline[d] to adopt a heightened ascertainability theory that requires a showing of administrative feasibility at the class certification stage." *Id.* at 265.

Here, the proposed Class is defined as:

All persons who purchased the Fireball Malt Products in the State of New York at any time during the period April 2, 2020, to the date of judgment.

Excluded from the Class are government entities, Defendant, any entity in which it has a controlling interest, Defendant's officers, directors, affiliates, legal representatives, employees,

successors, subsidiaries, and assignees, as well as Defendant's Counsel, Plaintiffs' Counsel, Your Honor and the members of their immediate families and judicial staff.

## LEGAL STANDARD

Class actions are essential for adjudicating cases involving many small claims that are not economically feasible to prosecute individually. In crafting Rule 23, "the Advisory Committee had dominantly in mind vindication of the rights of groups of people who individually would be without effective strength to bring their opponents into court at all." *AmchemProds., Inc. v. Windsor*, 521 U.S. 591, 617 (1997). Class actions give a voice to plaintiffs who "would have no realistic day in court if a class action were not available." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985).

To qualify for certification, a plaintiff must demonstrate by a preponderance of the evidence that the putative class action meets each of the four requirements of Rule 23(a) and satisfies at least one of the categories provided in Rule 23(b). *See In Re Visa Check / MasterMoney Antitrust Litig.*, 280 F.3d 124, 132-33 (2d Cir. 2001). The Court must conduct a "rigorous analysis," which may require it to "probe behind the pleadings before coming to rest on the certification question." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). However, "[t]he Second Circuit has emphasized that Rule 23 should be 'given liberal rather than restrictive construction.'" *Gorat v. Capala Bros., Inc.*, 257 F.R.D. 353, 361 (E.D.N.Y. 2009) (quoting *Mariso A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997)).

## ARGUMENT

### A. The Class Satisfies Federal Rule of Civil Procedure 23(a).

The Second Circuit has emphasized that Rule 23 should be given a "liberal rather than restrictive construction." *Marisol*, 126 F.3d at 377 (internal quotation marks and citation omitted). "[T]o deny a class action simply because all of the allegations of the class do not fit together like

pieces in a jigsaw puzzle would destroy much of the utility of Rule 23." *Cortigiano v. Oceanview Manor Home for Adults*, 227 F.R.D. 194, 203 (E.D.N.Y. 2005) (internal quotation marks and citation omitted).

Plaintiffs' proposed Class meets all of Rule 23's certification requirements, which include numerosity, commonality, typicality, and adequacy under Rule 23(a); and predominance and superiority under Rule 23(b)(3). Indeed, district courts in the Second Circuit have concluded that consumer protection claims like Plaintiffs' are "ideal for class certification." *See*, *e.g.*, *Jensen v. Cablevision Sys. Corp.*, 372 F. Supp. 3d 95, 121 (E.D.N.Y. 2019) (internal quotation omitted). The proposed class is also ascertainable under binding Second Circuit law in that it is defined according to objective criteria. *In re Petrobras Sec.*, 862 F.3d 250 (2d Cir. 2017).

### 1. Numerosity is Satisfied

Rule 23(a)(1) requires that a class be "so numerous that joinder of all members is impracticable," which is presumed where a class has more than forty members. *In re Vitamin C Antitrust Litig.*, 279 F.R.D. 90, 99 (E.D.N.Y. 2012). This does not require Plaintiffs to "establish the precise number of potential class members," especially where there are "estimates as to the size of the proposed class." *Nicholson v. Williams*, 205 F.R.D. 92, 98 (E.D.N.Y. 2001) (quoting *German v. Fed. Home Loan Mortg. Corp.*, 885 F. Supp. 537, 552 (S.D.N.Y. 1995)); *see also* 1 *Newberg On Class Actions*, § 3:5 (stating that the prevailing view is that "the plaintiff need not allege the exact number or identity of class members").

As confirmed by sales data obtained from Circana, Defendant sold ████ units of the Product in New York from February 2021 until October 2023.

Accordingly, it is undisputed that Defendant sold hundreds of thousands of units of the Product during the class period in New York through third-parties such as big box stores, bodegas,

convenience stores, drug stores, grocery stores, wholesale clubs, and/or online retailers, rendering joinder of all purchasers "impracticable."

### 2. Commonality is Satisfied

#### a. Legal Standard for GBL Claims

GBL section 349 "prohibits '[d]eceptive acts or practices in the conduct of any business, trade or commerce.'" *Sharpe v. A&W Concentrate Co.*, No. 19-768, 2021 WL 3721392, at *1 (E.D.N.Y. July 23, 2021) (quoting statute). Section 350 "bans 'false advertising.'" *Id.* (same). "Liability under these sections requires 'that a defendant engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result.'" *Id.* (quoting *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015)).

"The second element – whether a practice is materially misleading – assesses whether the practice 'is likely to mislead a reasonable consumer acting reasonably under the circumstances.'" *Sharpe*, 2021 WL 3721392, at *2. "Justifiable reliance by the plaintiff is not an element of the statutory claim." *Koch v. Acker, Merrall & Condit Co.*, 967 N.E.2d 675, 676 (N.Y. 2012).

#### b. Defendant's Conduct is Consumer Oriented

The first element of the GBL claims is that Defendant's conduct was "consumer-oriented." *See Sharpe*, 2021 WL 3721392, at *3 (certifying class of beverage purchasers who bought products labeled as being "made with aged vanilla" that instead contained synthetic vanilla substitutes). To be "consumer-oriented," "plaintiffs must show that the acts or practices have a broader impact on consumers at large in that they are directed to consumers or that they potentially affect similarly situated consumers." *Nat. Conv. Serv. LLC v. Applied Underwriters Captive Risk Assurance Co.*, 239 F. Supp. 3d 761, 791 (S.D.N.Y. 2017) (internal quotations omitted).

Here, the deception at issue is the design elements of the Products' packaging, specifically the Products' front labeling – containing name, color scheme, themes, fonts, symbols and spacing,

and tag lines. *See* SAC ¶ 8; Moore Decl. Exs. 5-11. Except being 21 years of age to purchase, the Products are available for purchase by the general public through retail outlets such as convenience stores and grocery stores in New York. *See* Answer, ¶ 55. Critical to this motion, the question of whether Defendant's acts were consumer-oriented and the evidence supporting that conclusion (e.g., the packaging) are common to all Class members. As such, the commonality requirement is met.

### c. *Reasonable Consumers Were Likely to Be Misled*

"The second element – whether a practice is materially misleading – assesses whether the practice 'is likely to mislead a reasonable consumer acting reasonably under the circumstances.'" *Sharpe*, 2021 WL 3721392, at *3. "And when an element follows an objective standard, it typically 'can be proved through evidence common to the class' and presents 'a common question.'" *Id.* (quoting *Amgen Inc. v. Conn. Ret. Plans. & Tr. Funds*, 568 U.S. 455, 467 (2013)).

*Sharpe* is instructive on this point regarding the GBL. In *Sharpe*, for example, the court found commonality: "the 'made with aged vanilla' claim appears on bottles and cans alike – in the same font, the same format, and roughly the same size." *Sharpe*, 2021 WL 3721392, at *4. The same holds true here where the design elements of the Products' packaging are the same, using the same Product name, color scheme, themes, fonts, symbols and spacing, and tag lines.[2] Critically, for purposes of this motion, whether these packaging design elements are deceptive is judged by the objective, reasonable consumer standard. Thus, any decision, whether "yes" or "no," will apply equally to all Class members.

In addition, a host of evidence common to all Class members supports a finding that the packaging is, in fact, likely to mislead reasonable consumers into believing Fireball Malt was

---

[2] The only variation in the packaging was the volume of the bottle, but this variation is de minimis.

actually Fireball Whisky. *First*, the Matthews Expert Report "concluded that a substantial percentage of individuals who see the label for the Defendant's Product believe that the beverage contains distilled spirits, both for individuals who have and who have not purchased Fireball products or distilled spirits in the past year. Further, we conclude that the use of a 'Fireball' branded label significantly increases the likelihood that consumers believe that a given beverage contains distilled spirits." *Id.* ¶ 61; *see also* ¶ 161.

*Second*, in its Answer to the Second Amended Complaint, Defendant admits that the Fireball Products share certain branding elements, including fonts and colors. *See* Answer to SAC (ECF No. 39), ¶¶ 8; *see also* Exs. 5-11. Defendant also admits that Fireball Malt is not available in retail locations that sell Fireball Whisky, Answer ¶ 55, thereby making side-by-side comparisons impracticable.

███████████████████████████████████████

██████████████████████████████

Based on these facts, the jury could determine that Fireball Malt's packaging leads reasonable consumers to believe the products contain whisky when they do not. Critically, this question is objective for this motion, thereby rendering a common answer, and all of this evidence is common to all Class members.

### d. There Exists a Common Method for Calculating Damages

"Under the GBL, plaintiffs suffer an injury when they pay a "premium" because of a product's misleading claim." *Sharpe,* 2021 WL 3721392 at *6.   Furthermore:

> [T]he GBL offers two different options for damages: plaintiffs can recover the price premium as actual damages, but if those damages are less than the available statutory damages, plaintiffs can choose the latter. The statutory damages are $50 under § 349 and $500 under § 350 – well above the price premium, which is a fraction of the price of the [products]. So most, if not all, class members will choose statutory damages, and statutory damages can be assessed on the basis of common proof. It follows that individual damages questions, if any, will not predominate.

*Id.* at *7 (internal citation and quotations omitted).

At this stage, Plaintiffs need only demonstrate the existence of a viable damages model that uses common, class-wide evidence. This remains true after the Supreme Court's decision in *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013), which reaffirmed that the issue of the commonality of damages calculation is just one of the factors in determining the predominance requirement under Rule 23(b)(3). "Conjoint analysis measures consumer desires by asking survey respondents about their relative preferences for certain combinations of product features." *Sharpe*, 2021 WL 3721392, at *7 (quoting *In re Gen. Motors LLC Ignition Switch Litig.* 407 F. Supp. 3d 212, 234 (S.D.N.Y. 2019).

Here, Plaintiffs' theory of liability is that Defendant misrepresented that its Products were Fireball Whisky when they were actually Fireball Malt and that this alleged misrepresentation caused the Class of consumers to pay a higher price for the Products. To measure the value of an individual product attribute, such as a specific understanding of the challenged claim, Plaintiffs' expert, Dr. Ingersoll, conducted a choice-based conjoint methodology utilizing the Sawtooth software system for online data collection. Ingersoll Report at Part IV. Dr. Ingersoll found that 25.2% of the Product's retail price is attributable to the deceptive packaging. *See* Ingersoll Report ¶¶ 7, 94-95, 102, 103. In other words, "purchasers faced a market price that should have been at least 25.2% lower had the deceptive label not been used." *Id.* at 96.

Numerous courts have approved conjoint analysis as a methodology to determine the price attributable to specific product features such as a label claim. *See, e.g., Sharpe*, 2021 WL 3721392, at *6 (accepting conjoint analysis methodology and certifying class); *Price v. L'Oreal USA, Inc.*, No. 17-614, 2018 WL 3869896 at *10-11 (S.D.N.Y. Aug. 15, 2018) (accepting proposed conjoint analysis methodology and certifying class).

But to be clear, Plaintiffs do not, and will not, need to *quantify* a premium with respect to their GBL claims. Section 349 provides a statutory minimum damage award of $50 per purchase of a misleadingly advertised product. GBL § 349 (h). Similarly, Section 350 provides for a statutory minimum damage award of $500 per purchase. GBL § 350-e. In other words, if Plaintiffs can prove *some* premium related to the packaging design elements greater than zero—*i.e.*, if they can prove the *fact* of damages, not necessarily the amount of damages—then they will be entitled to statutory damages for each purchase. *See Kurtz v. Kimberly-Clark Corp.*, 321 F.R.D. 482, 550 (E.D.N.Y. 2017) ("New York law does not require that the [price premium] must be proven with a specified degree of certitude" given GBL's statutory damages) (citing *Orlander*, 802 F.3d at 302).

15

Ultimately, "*all* elements of liability – the consumer-oriented conduct, the materially misleading statement, and the resulting injury – will depend on classwide proof." *Sharpe*, 2021 WL 3721392, at *6 (emphasis in original). "And 'when, as here, the central liability question is so clearly common to each class member,' any 'individualized damages calculation are insufficient to foreclose the possibility of class certification.'" *Id.* (quoting *Carriuolo v. General Motors Co.*, 823 F.3d 977,  988 (11th Cir. 2016)).

### 3.  *Typicality is Satisfied.*

Rule 23(a)(3) requires Plaintiffs' claims to be "typical" of the class. Fed. R. Civ. P. 23(a)(3). "The typicality requirement is not demanding." *Fogarazzao v. Lehman Bros., Inc.*, 232 F.R.D. 176, 180 (S.D.N.Y. 2005) (internal quotations omitted). Typicality is satisfied "when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993). "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." *Id.* at 936-37.

Here Plaintiffs allege a common pattern of deceptive conduct—Defendant's persistent and consistent presentation of its Malt Products in near-identical fashion to its whisky products, including uniformly through its packaging of the Products. Plaintiffs will present the same evidence (based on the same legal theories) to support their claims and the other Class Members' claims. Plaintiffs and the Class Members were exposed to the same allegedly false advertising on the Fireball Malt labels.

Plaintiffs' and other Class Members' claims arise out of the same course of conduct by Defendant and are based on the same legal theories. Every Malt Product was packaged near-identically to the whisky version, and every Product did in fact have a far lower alcohol content

and contained *no* whisky at all. Plaintiffs have been injured in the same manner as the Class members and seek redress through common legal claims. Plaintiffs' claims are, therefore, typical of the Class.

### 4. Adequacy is Satisfied.

Rule 23(a)(4) requires that the class representatives and class counsel "fairly and adequately protect the interests of the class." In the Second Circuit, this is satisfied if (1) the "'proposed class representative [] [has] an interest in vigorously pursuing the claims of the class'" and (2) has "'no interests antagonistic to the interests of other class members.'" *In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 249 (2d Cir. 2011) citing (*Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006)). Here, Plaintiffs meet both prongs.

First, Plaintiffs have retained counsel highly experienced in class-action litigation to prosecute their claims and those of the Class, committed to this litigation. *See* Firm Resumes, attached as Moore Decl. Ex. 29; Declaration of Spencer Sheehan, Ex. A; Declaration of Neal J. Deckant, Ex. 1; Declaration of Kevin Laukaitis, Ex. 1.

Second, Plaintiffs and Plaintiffs' Counsel have no interests antagonistic to the vigorous pursuit of the Class's claims against Defendant, as each Class Member's claims arise under the same legal theories, each was harmed in the same way, and each seeks the same recovery. *See* Declaration of Sharon Pizarro, ¶¶ 7-10, 18-21; Declaration of Larry Zielinski, ¶¶ 7-10, 18-21.

Plaintiffs will fairly and adequately protect the interests of the Class members, because it is in their best interest to prosecute the claims alleged in the SAC to obtain full compensation due to all members for the illegal conduct of which they complain. They stand in the same shoes as all other Class members, seek the same relief as other Class Members, and have a common interest in obtaining all the relief sought. *Id.*

**B. The Class Satisfies Federal Rule of Civil Procedure 23(b)(3).**

Having satisfied the requirements for Federal Rule of Civil Procedure 23(a), Plaintiffs also satisfy the 23(b)(3): predominance and superiority.

### 1. *Predominance is Satisfied.*

At its core, predominance is a balancing test that asks whether a case's common questions—multiplied by their significance—outweigh any individual questions: "Class-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case . . . can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002). Because of this, Plaintiffs do not need to show that *each* element of their claims is susceptible to common proof or that *no* individual questions will arise during the course of the litigation. *Sykes v. Mel S. Harris & Assoc.*, 780 F.3d 70, 81 (2d Cir. 2015). Instead, Plaintiffs must show that they can prove the "gravamen of every class member's claim" with common evidence or that the "central component of every claim relies on the same core factual issues." *Marchak v. JPMorgan Chase & Co.*, 84 F. Supp. 3d 197, 208 (E.D.N.Y. 2015). Here, Plaintiffs satisfy predominance because their false-advertising claims will "prevail or fail in unison." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 460 (2013).

None of the elements of Plaintiffs' GBL claims require individualized proof. As quoted above from the *Sharpe* case involving another deceptively labeled beverage: "*all* elements of liability – the consumer-oriented conduct, the materially misleading statement, and the resulting injury – will depend on classwide proof." *Sharpe,* 2021 WL 3721392 at *6.

Furthermore:

[T]he GBL offers two different options for damages: plaintiffs can recover the price premium as actual damages, but if those damages are less than the available statutory damages, plaintiffs can choose the latter. The statutory damages are $50

under § 349 and $500 under § 350 – well above the price premium, which is a fraction of the price of the [products]. So most, if not all, class members will choose statutory damages, and statutory damages can be assessed on the basis of common proof. It follows that individual damages questions, if any, will not predominate.

*Id.* at *7 (internal citation and quotations omitted). Thus, courts have consistently found that GBL claims meet the predominance requirement.

As discussed in the commonality section, ***all*** elements of the GBL claims ask common questions and can be answered with common evidence. There are no individualized questions that infect, much less predominate, this inquiry. As such, this element is met. *See Sharpe*, 2021 WL 1590208, at *5 ("the 'materially misleading' element raises common questions, and the centrality of those questions is strong evidence of predominance"); *Kurtz*, 321 F.R.D. at 544 (predominance requirement satisfied with respect to the GBL claims); *Goldemberg v. Johnson & Johnson*, 317 F.R.D. 374, 389 (S.D.N.Y. 2016) (same); *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 400 (S.D.N.Y. 2015) (same); *Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 568 (S.D.N.Y. 2014) (same).

### 2. *Superiority is Satisfied.*

Finally, a class action is a superior method of adjudicating this case. Rule 23(b)(3) provides four factors for the Court's consideration:

(A) [T]he interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of the class action.

Fed. R. Civ. P. 23(b)(3). All four of these factors favor class treatment here. It would cost Class Members much more to litigate an individual case than they could recover in damages. Where proceeding individually would be prohibitive due to the minimal recovery, "the class action device is frequently superior to individual actions." *See Seijas v. Republic of Argentina*, 606 F.3d 53, 58 (2d Cir. 2010). The relatively small amount of money at issue for each Class member renders

individual litigation infeasible, but a class action offers the potential for meaningful redress to the Class. Moreover, this case is manageable as a class action because liability will be established predominantly through common classwide proof, as described in the section on commonality.

## CONCLUSION

Defendant deceptive labeling of Fireball Malt comes from a desire to tap into a new market and let Defendant's profits runneth over. Plaintiffs have alleged a Class of similarly situated consumers who purchased Defendant's Products. The case is ripe for class certification. For the reasons stated above, the Court should certify the proposed Class.

Dated:    February 14, 2025

Respectfully submitted,

**REESE LLP**

*/s/Charles D. Moore*
121 N. Washington Ave., 2nd Floor
Minneapolis, Minnesota 55401
Tel: (212) 643-0500
*cmoore@reesellp.com*

**SHEEHAN & ASSOCIATES, P.C.**
Spencer Sheehan
60 Cuttermill Rd., Suite 412
Great Neck, New York 11021
Tel: (516) 268-7080
*spencer@spencersheehan.com*

**REESE LLP**
Michael R. Reese
100 West 93rd Street, 16th Floor
New York, New York 10025
Tel: (212) 643-0500
*mreese@reesellp.com*

**LAUKAITIS LAW LLC**
Kevin Laukaitis
954 Avenida Ponce De Leon
Suite 205, #10518
San Juan, Puerto Rico 00907
Tel: (215) 789-4462
*klaukaitis@laukaitislaw.com*

**BURSOR & FISHER, P.A.**
Neal J. Deckant
Jenna L. Gavenman
1990 North California Blvd., Suite 940
Walnut Creek, California 94596
Tel: (925) 300-4455
*ndeckant@bursor.com*
*jgavenman@bursor.com*

*Counsel for Plaintiffs and the Proposed Class*

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify pursuant to Your Honor's Individual Rule II.B that the Memorandum of Law in Support of Plaintiffs' Motion for Class Certification uses a proportionally spaced,  Times New Roman typeface of 12 points and contains 6,092 words, as counted by the Microsoft Word processing system used to produce this brief.

Date: February 14, 2025                 Respectfully submitted,

**REESE LLP**
 */s/ Charles D. Moore*
Charles D. Moore
121 N. Washington Ave, 2nd Floor
Minneapolis, MN 55401
(212) 643-0500