UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SHARON PIZZARO, *individually and on behalf of all others similarly situated*, *et al.*,

                Plaintiffs,

    v.

SAZERAC COMPANY, INC.,

                Defendant.

No. 23-CV-2751 (KMK)

---

CINDY KOONCE, *individually and on behalf of all others similarly situated*,

                Plaintiff,

    v.

SAZERAC COMPANY, INC.,

                Defendant.

No. 23-CV-4323 (KMK)

<u>OPINION & ORDER</u>

---

<u>Appearances</u>:

Michael R. Reese, Esq.
Charles D. Moore, Esq.
Reese LLP
New York, NY; Minneapolis, MN
*Counsel for Plaintiffs*

Spencer Sheehan, Esq.
Sheehan & Associates, P.C.
Great Neck, NY
*Counsel for Plaintiffs*

Daniel Tomascik, Esq.
San Juan, PR
*Counsel for Plaintiffs*

Neal Jamison Deckant, Esq.
Bursor & Fisher, P.A.
Walnut Creek, CA
*Counsel for Plaintiff Pizzaro*

Creighton R. Magid, Esq.
Elizabeth R. Baksh, Esq.
Dorsey & Whitney LLP
New York, NY; Washington, DC
*Counsel for Defendant*

KENNETH M. KARAS, United States District Judge:

Plaintiff Sharon Pizarro ("Pizarro"), individually and on behalf of all others similarly situated, brings this putative class action (the "*Pizarro* Action") against Sazerac Company, Inc. ("Defendant"), alleging that the labeling on and packaging of certain of Defendant's beverages is deceptive and misleading.[1]  (*See generally* Second Consol. Am. Class Action Compl. ("*Pizarro* SAC") (Dkt. No. 30, Case No. 23-CV-2751).)  Plaintiff Cindy Koonce ("Koonce," and together with Pizarro, "Plaintiffs"), individually and on behalf of all others similarly situated, has filed a similar putative class action (the "*Koonce* Action") against Defendant.  (*See generally* First Am. Class Action Compl. ("*Koonce* FAC") (Dkt. No. 20, Case No. 23-CV-4323).)  Plaintiffs assert that Defendant's labeling of their malt-based Fireball and Parrot Bay alcoholic beverages violates §§ 349 and 350 of the New York General Business Law ("GBL"), N.Y. Gen. Bus. Law §§ 349–50.  (*See Pizarro* SAC ¶¶ 75–90; *Koonce* FAC ¶¶ 66–87.)[2]

Before the Court are Pizarro's Motion for Class Certification (the "*Pizarro* Motion") and Koonce's Motion for Class Certification (the "*Koonce* Motion"; together with the *Pizarro*

---

[1] The Court granted Parties' joint motion to withdraw Larry Zielinski as a named plaintiff in the *Pizarro* Action.  (Dkt. No. 71, Case No. 23-CV-2751.)

[2] Unless otherwise noted (as here), the Court cites to the ECF-stamped page number in the upper-right corner of each page in cites from the record.

Motion, the "Class Certification Motions"), pursuant to Federal Rules of Civil Procedure 23(a), (b), and (c). (*See Pizarro* Not. of Mot. (Dkt. No. 46, Case No. 23-CV-2751); *Koonce* Not. of Mot. (Dkt. No. 42, Case No. 23-CV-4323).) Also before the Court are Plaintiffs' Motions in Limine ("MILs"). (*See Pizarro* MIL (Dkt. No. 69, Case No. 23-CV-2751); *Koonce* MIL (Dkt. No. 67, No. 23-CV-4323).)

For the reasons set forth below, the Class Certification Motions are granted and the MILs are denied.

## I.  Background

The background has been summarized in the Court's Opinion & Order addressing Defendant's Motions to Dismiss in this case, so the Court presumes familiarity with the facts and procedural history. (*See* Op. & Order on Mot. to Dismiss ("2024 Op.") (Dkt. No. 38, Case No. 23-CV-2751); *see also* Dkt. No. 35, Case No. 23-CV-4323).) The Court summarizes facts and procedural history relevant to resolution of the instant Motions below.

### A.  Factual Background

#### 1.  *Pizarro* Facts

Defendant manufactures, markets, and distributes a variety of alcoholic beverages. (*Pizarro* SAC ¶ 2.) One such beverage is Fireball Cinnamon Whisky ("Fireball Whisky"). (*Id*.)[3] Fireball Whisky's base ingredient is the distilled spirit, whisky. (*Id.* ¶ 7.) Fireball Whisky contains 33% alcohol by volume ("ABV"). (*Id.* ¶ 4.) In addition to its Fireball Whisky, Defendant produces a Fireball Cinnamon malt beverage ("Fireball Malt"), which—unlike Fireball Whisky—contains

---

[3] As Pizarro point out, Fireball Whisky uses that particular spelling because the product was developed in Canada. (*Pizarro* SAC 3 n.3.) Out of respect for our Northern neighbors, the Court will use this spelling throughout this Opinion.

16.5% ABV.  (*Id.* ¶¶ 1, 4.)  Pizarro alleges that, notwithstanding the fundamental differences between the products, they are sold with labels and in packaging that is nearly identical, which is misleading to the public.  (*See id.* ¶ 8.)

### 2. *Koonce* Facts

In addition to its Fireball products, Defendant produces a line of rums under the mark "Parrot Bay" ("Parrot Bay Rum").  (*Koonce* FAC ¶ 3.)  The "original" Parrot Bay Rum variety is advertised as a rum with "Natural Coconut Flavor," and is 21% ABV.  (*Id.* ¶ 4.)  In addition to Parrot Bay Rum, Defendant also produces malt-based Parrot Bay ("Parrot Bay Malt") products. (*Id.* ¶ 9.)  Parrot Bay Malt is 16.5% ABV.  (*Id.* ¶ 35.)  Koonce alleges that "[w]hen viewed together with the Parrot Bay Rum distilled spirit brand name, the [Parrot Bay Malt] label misleads consumers into believing it is or contains distilled spirits, or in fact rum."  (*Id.* ¶ 40.)

### B.  Procedural History

#### 1.  *Pizarro* Background

The Court denied Defendant's Motions to Dismiss on September 25, 2024.  (*See* 2024 Op.) On February 14, 2025, Pizarro filed a Motion to Certify the Class, along with the accompanying papers.  (*See Pizarro* Not. of Mot.; *Pizarro* Mem. of Law in Supp. of Mot. to Certify Class ("*Pizarro* Mem.") (Dkt. No. 45, Case No. 23-CV-2751).)[4]  On May 14, 2025, Defendant submitted its Opposition to the Motion.  (*See* Mem. of Law in Opp. to *Pizarro* Mot. to Certify Class ("Def.'s *Pizarro*. Opp.") (Dkt. No. 59, Case No. 23-CV-2751).)  On June 13, 2025, Pizarro

---

[4] Having closely reviewed the Parties' briefs across the two cases, the Court notes that they are virtually identical to one another.  (*Compare Pizarro* Mem. *with Koonce* Mem.)  Thus, for the sake of clarity and concision, the Court will generally cite only to briefing from the *Pizarro* case unless there are material differences.

filed the Reply Papers.  (*See Pizarro* Reply Mem. of Law in Supp. of Mot. to Certify Class ("*Pizarro* Reply") (Dkt. No. 67, Case No. 23-CV-2751).)

On June 13, 2025, Pizarro filed a Motion in Limine.  (*See Pizarro* MIL.)  Defendant filed the Opposition to the *Pizarro* MIL on June 20, 2025.  (*See* Def's Opp'n to *Pizarro* Mot. in Lim. ("Def's *Pizarro* MIL Opp.") (Dkt. No. 73, Case No. 23-CV-2751).)  Pizarro filed a Reply on June 21, 2025.  (*See Pizarro* MIL Reply (Dkt. No. 76, Case No. 23-CV-2751).)

## 2.  *Koonce* Background

The Court denied Defendant's Motions to Dismiss on September 25, 2024.  (*See* 2024 Op.) On February 14, 2025, Pizarro filed a Motion to Certify the Class, along with the accompanying papers.  (*See Koonce* Not. of Mot.; *Koonce* Mem. of Law in Supp. of Mot. to Certify Class ("*Koonce* Mem.") (Dkt. No. 41, Case No. 23-CV-4323).)  On May 14, 2025, Defendant submitted its Opposition to the Motion.  (*See* Mem. of Law in Opp. to *Koonce* Mot. to Certify Class ("Def.'s *Koonce* Opp.") (Dkt. No. 57, Case No. 23-CV-4323).)  On June 13, 2025, Koonce filed the Reply Papers.  (*See Koonce* Reply Mem. of Law in Supp. of Mot. to Certify Class ("*Koonce* Reply") (Dkt. No. 65, Case No. 23-CV-4323).)

On June 13, 2025, Koonce filed a Motion in Limine.  (*See Koonce* Mot. in Lim. ("*Koonce* MIL") (Dkt. No. 67, Case No. 23-CV-4323).)  Defendant filed the Opposition to *Koonce* MIL on June 20, 2025.  (*See* Def's Opp'n to *Koonce* Mot. in Lim. ("Def's *Koonce* MIL Opp.") (Dkt. No. 70, Case No. 23-CV-4323).)  Koonce filed a Reply on June 21, 2025.  (*See Koonce* MIL Reply (Dkt. No. 73, Case No. 23-CV-4323).)

## II.  Discussion

### A.  Standard of Review

Class certification is governed by Federal Rule of Civil Procedure 23.  Rule 23(a) provides that the party seeking certification must establish that (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative party are typical of claims or defenses of the class; and (4) the representative party will fairly and adequately protect the interests of the class.  *Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 159 (S.D.N.Y. 2014) (citing Fed. R. Civ. P. 23(a)).  These four factors are referred to as numerosity, commonality, typicality, and adequacy, respectively.  *Id; see also Kronenberg v. Allstate Ins. Co.*, 743 F. Supp. 3d 465, 479 (E.D.N.Y. 2024) (same).  "A class may be certified only if, 'after a rigorous analysis,' the [C]ourt is satisfied that the prerequisites of Rule 23(a) are met."  *Woodhams v. GlaxoSmithKline Consumer Healthcare Holdings (US) LLC*, No. 18-CV-3990, 2024 WL 1216595, at *9 (S.D.N.Y. Mar. 21, 2024) (alterations adopted) (quoting *Road v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015) (quoting *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013))).

In addition to Rule 23(a) factors, the representative party also must show that the action is appropriate for one of the three reasons set forth in Rule 23(b).  *See id.*  Here, Plaintiffs seek certification under Rule 23(b)(3), and so Plaintiffs must also show that "questions of law or fact common to class members predominate over any questions affecting only individual members," and "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ P. 23(b)(3).  These two factors are referred to as predominance and superiority, respectively.  *See Polvay v. FCTI, Inc.*, 713 F. Supp. 3d 1, 5 (S.D.N.Y. 2024).  Finally, the Second Circuit "[has] recognized that Rule 23 contains an implicit

threshold requirement that the members of a proposed class be readily identifiable, often characterized as an ascertainability requirement." *In re Petrobras Sec.*, 862 F.3d 250, 264 (2d Cir. 2017) (quotation marks omitted) (quoting *Sandusky Wellness Ct., LLC v. Medtox Sci., Inc.*, 821 F.3d 992, 995 (8th Cir. 2016)).  Thus, a representative party need only show "the existence of objective criteria that establish a membership with definite boundaries." *In re Actos Antitrust Litig.*, No. 13-CV-9244, 2024 WL 4251891, at *17 (S.D.N.Y. Aug. 9, 2024) (citing *Petrobras*, 862 F.3d at 269 n.20), *report and recommendation adopted*, 2024 WL 4345568 (S.D.N.Y. Sept. 30, 2024).  The party seeking class certification must establish by a preponderance of the evidence that it has met each of the relevant Rule 23 requirements.  *See In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 37–38 (2d Cir. 2006) (citation omitted); *Woodhams*, 2024 WL 1216595, at *9 (citing *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 137 (2d Cir. 2015)).

B.  Analysis

Plaintiffs seek certification of their GBL claims for the following classes: "All persons who purchased the Fireball Malt Products in the State of New York at any time during the period April 2, 2020, to the date of judgment[,]" (*Pizarro* Mem. 13); and "[a]ll persons who purchased the Parrot Bay Malt Products in the State of New York at any time during the period May 24, 2020, to the date of judgment," (*Koonce* Mem. 13).  Defendant argues in opposition that Plaintiffs do not satisfy commonality under Rule 23(a) and predominance under Rule 23(b)(3). (Def.'s *Pizarro*. Opp. 6.)  The Court addresses the Rule 23 factors in turn.

1.  Numerosity

"To satisfy Rule 23(a)(1)'s numerosity requirement, Plaintiffs must show that 'the class is so numerous that joinder of all members is impracticable.'"  *Alves v. Affiliated Care of Putnam, Inc.*, No. 16-CV-1593, 2022 WL 1002817, at *20 (S.D.N.Y. Mar. 30, 2022)

(quoting *Zivkovic v. Laura Christy LLC*, 329 F.R.D. 61, 68 (S.D.N.Y. 2018) (quoting Fed. R. Civ. P. 23(a)(1))).  "In this Circuit, numerosity is presumed when the putative class has at least forty members."  *Zivkovic*, 329 F.R.D. at 68–69 (citing *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995)).  "The inquiry is not strictly mathematical," *In re Namenda Direct Purchaser Antitrust Litig.*, 331 F. Supp. 3d 152, 202 (S.D.N.Y. 2018) (citing *Pa. Pub. Sch. Empls. Ret. Sys. v. Morgan Stanley & Co., Inc.*, 772 F.3d 111, 120 (2d Cir. 2014)), and "the district court must analyze each case separately to determine whether the numerosity requirement has been satisfied," *id.*  "Relevant considerations include judicial economy arising from the avoidance of a multiplicity of actions, geographic dispersion of class members, financial resources of class members, the ability of claimants to institute individual suits, and requests for prospective injunctive relief which would involve future class members."  *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993).

Plaintiffs assert, and Defendant does not contest, that numerosity is satisfied.  (*See Pizarro* Mem. 15.)  Here, sales data from discovery reveals that Defendant sold hundreds of thousands of units of the product in New York during the relevant period.  (*See id.*)  This number "suggest[s] far more than 40 individuals comprise [the] class."  *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 405 (S.D.N.Y. 2015).

2.  Commonality

"Commonality requires that there exist questions of law or fact that are both common to the class and answerable through a class-wide proceeding."  *In re Namenda*, 331 F. Supp. 3d at 202 (citing Fed. R. Civ. P. 23(a)(2)); *see also Alves*, 2022 WL 1002817, at *21 (same).  "The Supreme Court has clarified that this prong also requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'"  *Alves*, 2022 WL 1002817, at *21 (citation

omitted). "What matters to class certification is not the raising of common questions but rather, the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Mangahas v. Eight Oranges Inc.*, No. 22-CV-4150, 2024 WL 2801922, at *6 (S.D.N.Y. May 31, 2024) (alterations adopted) (emphasis in original) (quoting *Barrows v. Becerra*, 24 F.4th 116, 131 (2d Cir. 2022)).

"To decide whether commonality is satisfied, the Court must identify the theories of liability upon which plaintiff proceeds." *In re Scotts EZ Seed Litig.*, 304 F.R.D. at 405. Plaintiffs' theories of liability are under sections 349 and 350 of the New York GBL. (*Pizarro* Mem. 16.) To state a claim under either section, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Wynn v. Topco Assocs., LLC*, No. 19-CV-11104, 2021 WL 168541, at *2 (S.D.N.Y. Jan. 19, 2021) (quoting *Orlander v. Staples, Inc*., 802 F.3d 289, 300 (2d Cir. 2015)).

Plaintiffs argue that their claims raise three questions common to the class: whether Defendant's conduct was consumer oriented, reasonable consumers were likely to be misled, and the method for calculating damages. (*Pizarro* Mem. 16–21.) Defendant does not contest whether the first element of the GBL claims—the conduct being consumer-oriented—is a common question. (*See generally* Def.'s *Pizarro*. Opp.) The Court finds that commonality is satisfied because "for purposes of Rule 23(a)(2) even a single common question will do." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011) (alterations adopted) (citation and quotation marks omitted).

Assuming arguendo that the first element of the GBL claim is a common question, Defendant asserts that whether the bottle labels were materially misleading is not a common

question because consumers were exposed to different labels and there are no common questions of injury and damages because Plaintiffs cannot establish a price premium.  (Def's *Pizarro* Opp. 13–22.)  "Because this argument overlaps with a Rule 23(b)(3) predominance analysis, and because the Parties both discuss it as a challenge to predominance, the Court will address it below."  *Newman v. Bayer Corp.*, 348 F.R.D. 567, 579 (S.D.N.Y. 2025) (citation omitted).

### 3.  Typicality

"Typicality 'is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'"  *In re Namenda*, 331 F. Supp. 3d at 203 (quoting *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997)); *see also Polvay*, 713 F. Supp. 3d at 11 (same).  "If it is 'alleged that the same unlawful conduct was directed at or affected both the named plaintiff and class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying the individual claims.'"  *Polvay*, 713 F. Supp. 3d at 11 (quoting *Robidoux v. Celani*, 987 F.2d 931, 936–37 (2d Cir. 1993)).

Plaintiffs assert, and Defendant does not contest, that typicality is satisfied.  (*See Pizarro* Mem. 21.)  Here, Plaintiffs and Class Members' claims arise out of the same course of conduct by Defendant: the allegedly misleading labeling of malt beverages.  (*See id*.)

### 4.  Adequacy

"Adequacy requires that 'the representative parties fairly and adequately protect the interests of the class.'"  *Alves*, 2022 WL 1002817, at *21 (quoting Fed. R. Civ. P. 23(a)(4)).  Courts must ensure that "members of the class possess the same interests, and that no fundamental conflicts exist among members."  *Charron v. Wiener*, 731 F.3d 241, 249 (2d Cir. 2013).  "Where there is no evidence that the lead plaintiff and class members' interests are at

odds, [c]ourts presume the adequacy requirement of class certification is satisfied." *Bruce F. Esposito v. Nations Recovery Ctr.*, No. 18-CV-2089, 2020 WL 3489417, at *3 (D. Conn. June 26, 2020) (collecting cases).

Plaintiffs assert, and Defendant does not contest, that adequacy is satisfied. (*See Pizarro* Mem. 22.) Nothing in the record suggests that Plaintiffs' interests are adverse to those of the members of the putative Class or Subclass. Plaintiffs' counsel also is to be highly experienced and adequately equipped to prosecute this class litigation. Thus, the Court finds that the adequacy requirement is met.

Having found that Plaintiffs have satisfied the Rule 23(a) factors, the Court next discusses the Rule 23(b)(3) factors.

5.  Predominance

"The predominance requirement is satisfied if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 118 (2d Cir. 2013) (quotation marks omitted); *Alves*, 2022 WL 1002817, at *22 (same). Although "commonality, typicality, and predominance overlap," *Wynn v. N.Y.C. Hous. Auth.*, 314 F.R.D. 122, 128 (S.D.N.Y. 2016), predominance is "even more demanding" than the Rule 23(a) requirements, *Comcast*, 569 U.S. at 34. Rule 23(b)(3) requires "a showing that *questions* common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Amgen Inc. v. Conn. Ret. Plans and Tr. Funds*, 568 U.S. 455, 459 (2013) (emphasis in original).

"The predominance analysis considers whether that common question is capable of common answers on the basis of generalized proof—i.e.[,] whether an 'objective, reasonable consumer would be deceived." *Goldemberg v. Johnson & Johnson Consumer Companies, Inc.*, 317 F.R.D. 374, 388 (S.D.N.Y. 2016).  GBL § 349 makes it unlawful to engage in "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service" in New York.  N.Y. Gen. Bus. Law § 349.  As noted, "[t]o establish a prima facie case under GBL § 349, 'a plaintiff must demonstrate that (1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result.'"  *In re Scotts EZ Seed Litig.*, 304 F.R.D at 409 (quoting *Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000)).  Materiality under GBL § 349 is an objective inquiry; a deceptive act is defined as one "likely to mislead a reasonable consumer acting reasonably under the circumstances."  *Goldemberg*, 317 F.R.D. at 389 (alteration adopted) (internal quotation marks and citation omitted).  The same analysis applies to false advertising claims brought under GBL § 350.  *Id.*; *see also Goshen v. Mut. Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 324 n.1 (N.Y. 2002).  Additionally, neither Section 349 nor 350 requires proof of reliance, *see Koch v. Acker, Merrall & Condit Co.*, 967 N.E.2d 675, 675 (N.Y. 2012), nor proof that the defendant intended to mislead consumers, *see Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 26 (N.Y. 1995).

### a. Materially Misleading: Different Bottles and Labels

Defendant first argues that individual questions predominate the materially misleading element because there are different labels on different bottle sizes.  (Def's *Pizarro* Opp. 14–16.) "Labels on 100 ml and 355 ml bottles, as well as on the outer packaging of 6-packs and 10-packs, describes Fireball Malt as 'tasting like a smooth whisky'– a clear sign that the product is

12

*not* a whisky." (*Id.* at 14 (emphasis in original).)  "Purchasers of 6-packs or 10-packs of Fireball

Malt would have seen the ABV printed prominently on the customer-facing panel of the

package." (*Id.*)  Defendant also argues that the different bottle and label sizes undermine a

survey by Dr. Andrea Matthews—who found that 63% of consumers for Parrot Bay Malt and

66% of consumers for Fireball Malt believe they contain distilled spirit—because the survey

only used images of 50 ml bottles.  (*Id.* at 15; *Pizarro* Mem. 10; *Koonce* Mem. 9.)

     The Court is unpersuaded.  Importantly, *proving* materiality is not the question for class

certification.  *See Amgen, Inc.*, 568 U.S. at 468 ("[U]nder the plain language of Rule 23(b)(3),

plaintiffs are not required to prove materiality at the class-certification stage.").  Rather, the

question here is whether materiality *can be determined* on a class-wide basis.  Here, the answer

is yes.  "Classwide evidence will be used to establish whether [the product in question's label]

was [misleading], and if so, whether it was likely to mislead a reasonable consumer acting

reasonably under the circumstances." *In re Scotts EZ Seed Litig.*, 304 F.R.D. at 409; *see also*

*Goldemberg*, 317 F.R.D. at 389 ("[T]he potentially common question of whether a given

product's advertising set . . . is misleading can be measured under an objective standard:

whether it was 'likely to have misle[d] a reasonable consumer acting reasonably under the

circumstances.'" (quoting *Oswego Laborers' Loc. 214 Pension Fund*, 85 N.Y.2d at 26)).

     Even if parts of the label like the "malt beverage" font are larger, other aspects of the

label that could have misled consumers like the name "Fireball," Dragon logo, "Red Hot"

tagline, and "Cinnamon" statement are also larger.  (*Pizarro* Reply 5.)  If a jury finds that the

combination of these aspects would mislead a reasonable consumer to think they are buying

whisky or rum instead of malt, the issue is resolved for the entire class without an individual

inquiry.  *See Taylor v. Am. Bankers Ins. Grp., Inc.*, 700 N.Y.S.2d 458, 459 (App. Div. 1999)

(upholding class certification under the GBL where plaintiffs challenged a "general practice" of offering insurance coverage while "relegating to small, inconspicuous print the precise terms of the coverage being extended," despite the "variety of forms and promotions" used by defendants); *cf. Mantikas v. Kellogg Co.*, 910 F.3d 633, 637 (2d Cir. 2018) (finding that a statement on the back label cannot "correct misleading information" on the front); *Hasemann v. Gerber Prod. Co.*, No. 15-CV-2995, 2024 WL 1282368, at *12 (E.D.N.Y. Mar. 25, 2024) ("Even accepting, arguendo, that the more cabined language on the 'label inside' clarified that GSG does not reduce the risk of developing allergies, a jury could still find that a reasonable consumer would be left with that impression"); *Sharpe v. A&W Concentrate Co.*, No. 19-CV-768, 2021 WL 3721392, at *4 (E.D.N.Y. July 23, 2021) ("[T]he 'made with aged vanilla' claim appears on bottles and cans alike – in the same font, the same format, and roughly the same size. That is enough for a finding of commonality.").[5]

And while Defendant argues that the label "tasting like a smooth whisky" is a clear sign that the product is not a whisky, (Def's *Pizarro* Opp. 14), the Court disagrees with this interpretation. A reader could reasonably understand the label to mean that the product is indeed whisky that tastes smooth like an expensive, well-aged whisky despite being a cheaper whisky.

---

[5] Indeed, as Plaintiffs point out, a court in this District recently certified a similar class of consumers of one of Defendant's products based on mislabeling allegations similar to the ones in the instant Action. (*See* Notice of Supplemental Authority 1 (Dkt. No. 77, Case No. 23-CV-2751).) In rejecting the same argument Defendant makes here, Judge Subramanian noted that "[i]f a jury finds that the combination of these elements would mislead a reasonable consumer to think that they were buying Southern Comfort whiskey, instead of its malt beverage,"—despite variations in bottle and label size across the product—"then the issue is resolved for the entire class." *Andrews v. Sazerac Co., Inc.*, No. 23-CV-1060, 2025 WL 1808797, at *6 (S.D.N.Y. July 1, 2025).

Like the plaintiffs in *In re Scotts EZ Seed* and *Goldemberg*, Plaintiffs here alleges that putative class members suffered economic harm when they paid a premium based on a misleading claim, which will be determined by class-wide evidence. *See In re Scotts EZ Seed Litig.*, 304 F.R.D. at 409; *see also In re Kind LLC "Healthy and Natural" Litig.*, 337 F.R.D. 581, 600 (S.D.N.Y. 2021) (finding in a similar case that predominance was met and that "[o]ther courts in this district have come to the same conclusion"), *class decertified on other grounds*, 627 F. Supp. 3d 269 (S.D.N.Y. 2022); *Goldemberg*, 317 F.R.D. at 387–88, 402 (finding that damages for the injury of purchasing a product with a misleading label could be determined on a class-wide basis and certifying the class).

### b. Causation, Injury and Damages: Price Premium

Finally, Plaintiffs must demonstrate injury. "Injury is adequately alleged under GBL §§ 349 or 350 by a claim that a plaintiff paid a premium for a product based on defendants' inaccurate representations." *Goldemberg*, 317 F.R.D. at 393 (quoting *Ackerman v. Coca-Cola, Co.*, No. 09-CV-395 2010 WL 2925955, at *23 (E.D.N.Y. July 21, 2010)). Again, Plaintiffs are not required to prove injury, but rather must demonstrate that class-wide questions predominate. To satisfy this element of the predominance requirement, Plaintiffs must propose a damages model consistent with the theory of liability. *See Comcast*, 569 at 33.

Plaintiffs rely on a choice-based conjoint survey by Dr. William Robert Ingersoll to prove the existence of a price premium. (*Pizarro* Mem. 12.) "In such a survey, respondents are presented with a series of questions and asked to select 'the most preferred product among several available options with different attributes.'" *Allegra v. Luxxotica Retail N. Am.*, 341 F.R.D. 373, 451 (E.D.N.Y. 2022) (citation omitted). After analysis of the survey results,

Ingersoll found that "25.2% of the [Fireball Malt]" and "28.8% of the [Parrot Bay Rum]'s retail price[s] [are] attributable to the deceptive packaging." (*Id.*; *Koonce* Mem. 12.)

Defendant argues that there is no price premium because it line prices the products, which means "assigning a single, uniform price to all products sold in identical quantities." *Weiner v. Snapple Beverage Corp.*, No. 07-CV-8742, 2010 WL 3119452, at *1 (S.D.N.Y. Aug. 5, 2010). The Court finds this argument to be premature.

> When, as here, "the concern about the proposed class is not that it exhibits some fatal dissimilarity but, rather, a fatal similarity—[an alleged] failure of proof as to an element of the plaintiffs' cause of action—courts should engage that question as a matter of summary judgment, not class certification."

*Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 457 (2016) (citation omitted). Because line pricing is about potentially fatal similarity, it should be addressed at summary judgment. *See Sharpe*, 2021 WL 3721392, at *8–9 (rejecting the same line pricing argument and stating, "[i]n stressing that the answers may not be in plaintiffs' favor, defendants cite only 'a fatal similarity – an alleged failure of proof as to an element of the plaintiffs' cause of action'" (quoting *Amgen¸* 568 U.S. at 470)).

Next, Defendant argues that the Ingersoll survey is unreliable for three reasons. (Def's *Pizarro* Opp. 19–28.) First, Ingersoll used "an improper survey universe[,]" (*id.* at 30, 19–22); second, he "fail[ed] to consider the effect of convenience[,]" (*id.* at 30, 22–24); and third, he failed to consider "supply side factor," (*id.* at 30–31, 25–28). The Court addresses these arguments in order.

First, Defendant argues that the Ingersoll survey populations are overinclusive, so the survey is not probative. (Def's *Pizarro* Opp. 19–20.) Ingersoll's survey populations are: "residents of the state of New York over the age of 21 who had purchased or considered purchasing a cinnamon-flavored alcoholic beverage product for their own personal consumption

in the last 12 months[,]" (*Pizarro* Reply 7), and "residents of the state of New York over the age of 21 who had purchased or considered purchasing a Parrot Bay brand alcoholic beverage product for their own personal consumption in the last 12 months," (*Koonce* Reply 7).

The Court does not find the survey population to be unduly overinclusive because it appropriately encompasses "potential buyers." *Capri Sun GmbH v. Am. Bev. Corp.*, 595 F. Supp. 3d 83, 124 (S.D.N.Y. 2022) ("To avoid being overinclusive, such a survey should 'encompass only the potential buyers of the products at issue' . . . [t]o avoid being underinclusive, it must not 'defin[e] a group narrower than the ideal universe, thus leaving out a group of persons whose perception is relevant.'" (citations omitted)). And even if the survey is overinclusive, that goes to weight, not admissibility. *See Kurtz v. Costco Wholesale Corp.*, 818 F. App'x 57, 62 (2d Cir. 2020) (summary order) ("We acknowledge that Weir's model fails to consider some arguably significant variables, but, '[n]ormally, failure to include variables will affect the analysis' probativeness, not its admissibility.'" (quoting *Bazemore v. Friday*, 478 U.S. 385, 400 (1986) (Brennan, J., concurring in part and joined by all members of the Court))); *City of Philadelphia v. Bank of Am. Corp.*, No. 19-CV-1608, 2023 WL 6160534, at *6 (S.D.N.Y. Sept. 21, 2023) ("Although [the defendants] have forceful, perhaps even meritorious, disagreements with Dr. Schwert regarding his variable selection and model specification, that is not enough to reject his models at [the class certification] stage.").

Second, Defendant argues that Ingersoll's failure to consider the effect of convenience contravenes the Supreme Court's decision in *Comcast*. (Def's *Pizarro* Opp. 24.) Under *Comcast*, "[t]o satisfy the predominance requirement, plaintiffs must propose a damages model consistent with their theory (or theories) of liability." *In re Scotts EZ Seed Litig.*, 304 F.R.D. at 412 (citing *Comcast*, 569 U.S. at 33). Plaintiffs have met this requirement through the choice-

based conjoint survey by Ingersoll.  Defendant's criticism of this survey falls short, as Defendant

fails to cite any cases for the proposition that a conjoint analysis must consider all external

factors like convenience to measure the existence of a price premium.  (Def's *Pizarro* Opp. 23–

24.)  The one case Defendant does cite only emphasizes that conjoint analyses must accurately

isolate the allegedly misleading product features.  *See id.*; *In re Scotts EZ Seed Litig.*, 304 F.R.D.

at 413 ("[F]or plaintiffs' price premium model adequately to match their second theory of

liability—that they were damaged when they paid a premium associated with the 50% thicker

claim—[the expert] must control for *product features* other than the 50% thicker claim when

calculating the price premium." (emphasis added)); *see also Kurtz*, 818 F. App'x at 62 ("The fact

that Weir's model may fail to account for other possible sources of a price premium simply

means that his model may not ultimately prove Plaintiff's claim.  But it still serves as common

evidence of plaintiffs' theory of injury and does not run afoul of *Comcast*.").

    Third, Defendant argues that Ingersoll's failure to account for supply-side factors

undermines the conjoint analysis.  (Def's *Pizarro* Opp. 25–28.)  But courts have found

> that conjoint analyses can adequately account for supply-side factors—and can
> therefore be utilized to estimate price premia without running afoul of *Comcast*—
> when (1) the prices used in the surveys underlying the analyses reflect the actual
> market prices that prevailed during the class period; and (2) the quantities used (or
> assumed) in the statistical calculations reflect the actual quantities of products sold
> during the class period.

*Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084, 1105 (N.D. Cal. 2018).

    Here, Defendant acknowledges that Ingersoll considers "historical pricing data" and "the

volume of Fireball Malt actually sold."  (Def's *Pizarro* Opp. 26.)  "That empirical data tether[s]

[Ingersoll's] opinion to market conditions, including pricing and premiums."  *Hasemann v.

Gerber Prods. Co.*, No. 15-CV-2995, 2024 WL 1282368, at *18 (E.D.N.Y. Mar. 25, 2024) (first

alteration in original) (internal quotation marks and citation omitted).  In *In re Gen. Motors LLC*

*Ignition Switch Litig.*, 407 F. Supp. 3d 212 (S.D.N.Y. 2019), Judge Furman helpfully

distinguished between cases with dangerous defects and classic mislabeling cases for when the

use of historical pricing data is apposite. *Id.* at 239. He reasoned that "where the alleged

misrepresentations and omissions concern dangerous defects," it is difficult to account for

supply-side factors because "products containing such defects are rarely (if ever) sold (or

allowed to be sold by regulators) when the defects are fully disclosed." *Id.* But "[i]n a classic

mislabeling case," using historical pricing data to account for supply-side factors in conjoint

analyses "makes sense." *Id.* This case is a classic mislabeling case, not a case concerning

dangerous defects; even if consumers purchase malt beverages under the mistaken impression

that beverages are whisky or rum, an emergency room visit will not be necessary if consumed in

moderation. Thus, the Court finds that the Ingersoll study adequately considers the supply-side

factors for purposes of class certification. *See Sharpe*, 2021 WL 3721392, at *8 (affirming that

the "framework" of using historical data "makes sense in a mislabeling case").[6]

    While Defendant has pointed out potential flaws in Plaintiffs' "damages model," the

Court concludes that those flaws are not sufficient to defeat class certification. Defendant may,

of course, challenge the model and related expert testimony at summary judgment and through

cross-examination, presentation of contrary evidence, and expert testimony at trial. *See Martin*

*v. Monsanto Co.*, No. 16-CV-2168, 2017 WL 1115167, at *9 (C.D. Cal. Mar. 24, 2017) (finding

---

    [6] This conclusion again aligns with Judge Subramanian's reasoning in *Andrews*. There,
Defendant similarly challenged Dr. Ingersoll's model as flawed because it did not account for
supply-side factors. *Andrews*, 2025 WL 1808797, at *9. Judge Subramanian rejected this
argument, noting that a "majority of decisions . . ., at least for class-certification purposes, hold
that relying on real-world historical pricing data suffices to account for supply-side factors in a
'classic mislabeling' case," and concluding that "Ingersoll's conjoint analysis provides an
acceptable, though likely imperfect method of measuring the damages attributable to plaintiffs'
theory of liability." *Id.* at *10–11 (citation and quotation marks omitted).

that plaintiff's damages models "[were] adequately tied to [p]laintiff's theory of liability" and that flaws in those models "[were] not sufficient to defeat class certification" because defendant could challenge those models at trial); *cf. Passman v. Peloton Interactive, Inc.*, 671 F. Supp. 3d 417, 452 (S.D.N.Y. 2023) (noting that defendant's arguments as to predominance go instead to "an alleged failure of proof as to an element of the plaintiffs' cause of action" and, as such, "are properly addressed to the factfinder at summary judgment or during a trial, not on a motion to certify the class" (quoting *Amgen,* 568 U.S. at 470)), *vacated on other grounds*, No. 19-CV-11711, 2025 WL 1284718 (S.D.N.Y. May 2, 2025).

The Court also finds any arguments about disparate damages by Defendant to be premature.  *See In re Scotts EZ Seed Litig.*, No. 12-CV-4727, 2017 WL 3396433, at *6 (S.D.N.Y. Aug. 8, 2017) (finding the same argument premature because a jury had not yet awarded damages).  Disparate damages can offend due process, but that is a hypothetical concern until damages are awarded, and therefore such arguments are not considered "to prevent [class] certification."  *Parker v. Time Warner Ent. Co., L.P.*, 331 F.3d 13, 22 (2d Cir. 2003); *see also In re Scotts EZ Litigation*, 2017 WL 3396433, at *6 (noting that the court was "sympathetic" to defendants' concern but denying summary judgment because the argument was premature).

Thus, the Court finds that the predominance requirement is met.

6.  Superiority

A proposed class must satisfy the superiority requirement, which necessitates a finding that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  In making this determination, courts consider

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or

undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

*Id.* Here, members of the Classes—which include thousands of people—are not interested in bringing individual actions because many do not have the resources to do so and the small amount of recoverable damages that would be available in individual actions. (*See Pizarro* Mem. 24.) As such, size of the classes and circumstances of their members make a class action the better method. *See In re Scotts EZ Seed Litig.*, 304 F.R.D. at 415 ("When, as here, proceeding individually would be prohibitive for class members with small claims the class action device is frequently superior to individual actions."). Defendant does not contest this element.

Accordingly, the Court concludes that here, a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy." *In re AXA Equitable Life Ins. Co. COI Litig.*, No. 16-CV-740, 2020 WL 4694172, at *14 (quoting Fed. R. Civ. P. 23(b)(3)). Thus, the Court finds that both Rule 23(b)(3) factors are satisfied.

7. Ascertainability

"The ascertainability requirement 'requires only that a class be defined using objective criteria that establish a membership with definite boundaries.'" *Polvay*, 713 F. Supp. 3d at 11 (quoting *Petrobras*, 862 F.3d at 264). The standard is "not demanding and is designed only to prevent the certification of a class whose membership is truly indeterminable." *In re Scotts EZ Seed Litig.*, 304 F.R.D. at 407 (quoting *Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 568, 567 (S.D.N.Y. 2014)).

Plaintiffs argue—and Defendant does not contest—that the proposed class definitions are ascertainable. (*Pizarro* Mem. 13–14.) The criteria here are both objective and definite as they provide a specific period in which a certain set of individuals purchased a product. *See In re*

21

*Aphria, Inc. Sec. Litig.*, 342 F.R.D. 199, 205 (S.D.N.Y. 2022) ("A class is sufficiently ascertainable where it includes persons who acquired specific securities during a specific time period in domestic transactions because these criteria—securities purchases identified by subject matter, timing, and location—are clearly objective." (alterations adopted) (quoting *Petrobras*, 862 F.3d at 269)). Moreover, Plaintiffs' class definitions allow "the Court [to] determine who is in the class without having to answer numerous individualized questions." *Collins v. Anthem*, Inc., No. 20-CV-1969, 2024 WL 1172697, at *13 (E.D.N.Y. Mar. 19, 2024). In fact, "[t]he proposed class is not defined by any subjective requirement like 'state of mind' that would render class members unascertainable." *In re Deutsche Bank AG Sec. Litig.*, 328 F.R.D. 71, 85 (S.D.N.Y. 2018) (holding that ascertainability was satisfied where the class was defined by all person who purchased specific securities within a specific time period).

Here, Plaintiffs' proposed objective criteria is similar to that which has been deemed sufficient under this requirement. *See Famular v. Whirlpool Corp.*, No. 16-CV-944, 2019 WL 1254882, at *4 (S.D.N.Y. Mar. 19, 2019) (in a GBL § 349 case, finding ascertainable a class "consisting of individuals who purchased the allegedly mislabeled washing machines in New York"); *Hart v. BHH, LLC*, No. 15-CV-4804, 2017 WL 2912519, at *6–7 (S.D.N.Y. July 7, 2017) (finding ascertainable a class of individuals who purchased nearly 2.4 million units of a product in question); *In re Scotts EZ Seed Litig.*, 304 F.R.D. at 407 (finding ascertainable "classes consisting of New York and California purchasers of EZ seed packages containing the [disputed] claim"); *see also Kurtz v. Kimberly-Clark Corp.*, 321 F.R.D. 482, 539 (E.D.N.Y. 2017) (in a GBL § 349 case, finding ascertainable a class of "a particular group of individuals who were harmed in a particular way (defrauded by labels and marketing materials) during a

specific period in particular areas" (quoting *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 660–61 (7th Cir. 2015))).  Thus, the Court finds that the ascertainability requirement is met.

In sum, Court finds that Plaintiffs have satisfied all Rule 23 requirements and the additional implied ascertainability requirement.

### III.  Conclusion

For the foregoing reasons, Plaintiffs' Motions to Certify a Class are granted.  The Court appoints Plaintiff Sharon Pizarro as class representative for the *Pizarro* Action.  The Court appoints Plaintiff Cindy Koonce as class representative for the *Koonce* Action.  The Court appoints Reese LLP, Sheehan & Associates, P.C., Bursor & Fisher, P.A., and Laukaitis Law LLP as class counsel for both actions.

Plaintiffs filed their MILs without submitting pre-motion letters, contravening Section II.A. of the Court's Individual Rules of Practice.  *See* Individual Rules of Practice of the Honorable Kenneth M. Karas, II.A.  Thus, the Court denies, without prejudice, Plaintiffs' MILs for failure to adhere to those rules.  *See Mae v. Quickway Ests. LLC*, No. 22-CV-3048, 2023 WL 6162927, at *9 (S.D.N.Y. Sept. 21, 2023) (denying a motion for failure to follow the court's Individual Rules of Practice).

The Clerk of Court is respectfully directed to terminate the pending motions.  (Dkt. Nos. 46, 69 (Case No. 23-CV-2751); Dkt. Nos. 42, 67 (Case No. 23-CV-4323).)

SO ORDERED.

Dated:    September 18, 2025
          White Plains, New York

_____
      KENNETH M. KARAS
      United States District Judge