UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SHARON PIZZARO, *individually and on behalf of all others similarly situated, et al.*,

Plaintiffs,

v.

SAZERAC COMPANY, INC.,

Defendant.

No. 23-CV-2751 (KMK)

ORDER

---

KENNETH M. KARAS, United States District Judge:

On May 14, 2025, Counsel for the Sazerac Company ("Defendant") moved to seal certain materials filed in connection with its opposition to a motion for class certification filed by Sharon Pizzaro individually and on behalf of all others similarly situated ("Plaintiff"). (*See* Letter from Creighton R. Magid, Esq. to Court ("Def.'s Letter") 1–2 (Dkt. No. 57).)[1] On June 21, 2025, Counsel for Plaintiff requested to file certain portion of a Reply Memorandum under

---

[1] Specifically, Defendant moved to seal five exhibits that contained "proprietary data resulting from consumer surveys that Sazerac commissioned or paid considerable sums to obtain"; six declaration paragraphs that describe two of those exhibits; four paragraphs of declarations that contain "commercially sensitive information regarding the number of complaints Sazerac has received regarding Fireball Malt"; four paragraphs of a declaration that "disclose confidential cost and sales information, as well as strategic concerns"; and two expert reports. (Def.'s Letter 1–2.)

Defendant also sought leave from the Court "to redact discrete sections of the memorandum of law opposing Plaintiffs' motion for class certification that quote from or refer to the Documents and to internal documents designated as confidential pursuant to the Protective Order in *Andrews v. Sazerac Company, Inc.*," where the court issued a protective order. (*Id.* at 1.) However, it did not specify which portions of the memorandum of law it sought to redact. (*See id.*; *see also* Def.'s Mem. of Law in Opp'n to Class Certification ("Def.'s Mem.") (Dkt. No. 59) (memorandum filed without any redactions, and without sealing).) Accordingly, the Court does not address whether any such redactions would be appropriate.

seal.  (*See* Letter from Charles D. Moore, Esq. to Court ("Pls.' Letter") 1–2 (Dkt. No. 74).)[2]

Neither request was opposed.  (*See generally* Dkt.)  For the reasons explained herein, the Parties'

motions are granted in part and denied in part without prejudice to renewal.

## I. Discussion

### A. Governing law

Determining whether the public has a right of access to documents in a case, or whether

those documents may instead remain under seal, is a multi-step process governed by

constitutional as well as common law.  The public has a strong presumptive right of access to

certain judicial documents, established by the First Amendment, as well as a weaker presumptive

right to all judicial documents, established at common law.  *Newsday LLC v. Cnty. of Nassau*,

730 F.3d 156, 163 (2d Cir. 2013) ("Federal courts employ two related but distinct presumptions

in favor of public access to court proceedings and records: a strong form rooted in the First

Amendment and a slightly weaker form based in federal common law."); *see also United States*

*v. Amodeo*, 71 F.3d 1044, 1047–49 (2d Cir. 1995) ("*Amodeo II*") (discussing and analyzing the

presumption of access under common law).

In deciding whether the common law right applies, the Court evaluates whether the

document is a "judicial document," that is, "a filed item that is relevant to the performance of the

judicial function and useful in the judicial process." *Bernstein v. Bernstein Litowitz Berger &*

---

[2] Plaintiffs moved the Court to permit them to file "certain portions of [the] Reply
Memorandum in Support of [the] Motion to Exclude Evidence" under seal.  (Pls.' Letter at 1.)
As justification, Plaintiffs explained that the "reply brief discusses the contents of a document
that was designated as 'Confidential' under the Protective Order" in the Action currently
proceeding against Defendant for its Southern Comfort Malt products, which is pending before
Judge Arun Subramanian.  (*Id.*)  *See Andrews v. Sazerac Co., Inc.*, No. 23-CV-1060, 2025 WL
1808797 (S.D.N.Y. July 1, 2025).

*Grossmann LLP*, 814 F.3d 132, 139 (2d Cir. 2016) (quotation marks and citation omitted); *see also United States v. Greenwood*, 145 F.4th 248, 254–55 (2d Cir. 2025) ("The common law right of public access turns on whether the document at issue is a judicial document, to which the common law presumption applies."). If so, the Court determines the weight of the presumption. *Amodeo II*, 71 F.3d at 1049 ("As one moves along the continuum, [determined by the role of the material in the exercise of Article III power and the value of such information to those monitoring the courts] the weight of the presumption declines."); *Bernstein*, 814 F.3d at 142–43 ("Once the court has determined that the documents are judicial documents . . . it must determine the weight of that presumption. The weight . . . is a function of (1) the role of the material . . . in the exercise of Article III judicial power and (2) the resultant value of such information to those monitoring the federal courts[.]" (quotation marks and citation omitted)). It then balances competing considerations—for instance, the "danger of impairing law enforcement or judicial efficiency," or "the privacy interests of those resisting disclosure"—against the presumption. *Amodeo II*, 71 F.3d at 1050.

Under the First Amendment, the right of access applies to "certain judicial documents." *Greenwood*, 145 F.4th at 255. Courts follow two different approaches to determine whether the right applies to particular material. *Newsday*, 730 F.3d at 164. Under the "experience-and-logic" test, a court asks whether the documents "have historically been open to the press and general public," and whether "public access plays a significant positive role in the functioning of the particular process in question." *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 120 (2d Cir. 2006) (quotation marks and citation omitted). In the alternative, a court may consider the extent to which the documents "are derived from or are a necessary corollary of the capacity to attend the relevant [court] proceedings." *Id.* (quotation marks and citation omitted, alteration

adopted).  Under either approach, if the First Amendment right applies, the moving party must demonstrate that sealing is "essential to preserve higher values and is narrowly tailored to serve that interest."  *Bernstein*, 814 F.3d at 144.

Materials submitted in support of a motion, even when commercially sensitive, are properly considered judicial documents.  *See Graczyk v. Verizon Commc'ns, Inc.*, No. 18-CV-6465, 2020 WL 1435031, at *9 (S.D.N.Y. Mar. 24, 2020) (concluding contracts submitted in support of motion "plainly" were judicial documents); *Standard Inv. Chartered, Inc. v. Nat'l Ass'n of Sec. Dealers, Inc.*, No. 07-CV-2014, 2008 WL 199537, at *16 (S.D.N.Y. Jan. 22, 2008) ("Motion papers are judicial documents . . . .").  This is particularly true when the filed materials are "explicitly referred to, and quoted" by a party, and forms "one of the key grounds" for a party's argument.  *Olson v. Major League Baseball*, 29 F.4th 59, 88 (2d Cir. 2022).

Courts in this district "routinely permit parties to seal or redact commercially sensitive information to protect confidential business interests and financial information."  *IBM Corp. v. Micro Focus (US), Inc.*, No. 22-CV-9910, 2024 WL 343265, at *1 (S.D.N.Y. Jan. 30, 2024); *see also Gracyzk*, 2020 WL 1435031, at *9 (reasoning that information in contracts "had no bearing on [the] [c]ourt's treatment of [p]laintiff's motion" and involved "sensitive" materials, and therefore "the presumption in favor of public access is low" and outweighed the public interest); *Bernstein*, 814 F.3d at 143 (citing, among other prototypical examples where interests might favor secrecy, cases involving the revelation of "trade secrets").  Although courts can "seal 'business information that might harm a litigant's competitive standing' in the market," the mere "'fact that business documents are secret or that their disclosure might result in adverse publicity does not automatically warrant a protective order.'"  *New York v. Actavis, PLC*, No. 14-CV-

4

7473, 2014 WL 5353774, at *3 (S.D.N.Y. Oct. 21, 2014) (quoting *In re Parmalat Sec. Litig.*, 258 F.R.D. 236, 244 (S.D.N.Y. 2009)).

### B. Common law

#### 1. Judicial Documents

The documents at issue in both requests are clearly judicial documents. Those documents were "placed before the court by the parties" and are "relevant to the performance of the judicial function and useful in the judicial process." *Mirlis v. Greer*, 952 F.3d 51, 58 (2d Cir. 2020) (internal quotation marks and citation omitted); *see also Olson*, 29 F.4th at 88–89 (recognizing that materials with a tendency to influence a district court's ruling are properly treated as judicial documents, even if the court ultimately finds their contents "immaterial" to its decision); *Kewazinga Corp. v. Google LLC*, No. 20-CV-1106, 2024 WL 4224792, at *1 (S.D.N.Y. Sept. 18, 2024) (reasoning that "memorandum of law and exhibits in support of [a] motion," *inter alia*, "are judicial documents"); *Fossil Grp., Inc. v. Angel Seller LLC*, No. 20-CV-2441, 2024 WL 2076714, at *2 (E.D.N.Y. May 9, 2024) (denying request to seal language from memorandum in support of motion which, the court explained, was "an important judicial document").

#### 2. Weight of the Presumption

Generally, there is a "very strong presumption in favor of public access" to all judicial documents, *Olson*, 29 F.4th at 88 (quotation marks omitted), particularly those "filed in connection with dispositive motions," *id.* at 90. The documents filed under seal here were submitted as part of briefing on a Motion for Class Certification and in support of the parties' Motions in Limine; these are non-dispositive motions, and so the presumption falls somewhere short of its "zenith." *See id.* Moreover, the materials were not central to the Parties' briefing or the legal issues decided by the Court. Many of the materials that Defendant requested be filed

under seal were not even referenced in Defendant's memorandum. (*See generally* Def.'s Mem. in Opp'n to Class Certification ("Def.'s Mem.") (Dkt. No. 59).) Information that is "largely collateral to the factual and legal issues central to the resolution of these motions" is afforded a lower weight than material at the heart of the decision before the Court. *Oliver Wyman, Inc. v. Eielson*, 282 F. Supp. 3d 684, 706 (S.D.N.Y. 2017). The weight of the presumption is even lower as to the materials filed supporting Plaintiff's Reply, as the Court denied the Motion in Lime for failure to adhere to the Court's Individual Rules of Practice, and therefore did not reach any of the legal issues presented in the Parties' briefs. *See Pizzaro*, 2025 WL 2682673, at *11.

The weight of the presumption afforded to the materials that the Parties seek to seal is therefore somewhat reduced. *See Oliver Wyman*, 282 F. Supp. 3d at 706 (assigning "low" presumption to materials that were "largely collateral to the factual and legal issues central to the resolution of [the parties'] motions").

3. Balance of Interests

As to the need to protect values that weigh against disclosure and the balance of interests, the Court determines the following:

a. Third-Party Consumer Behavior Reports

Defendant requests that the Court permit it to file under seal copies of reports prepared by Numerator and Neilsen, "third-party sources of information regarding consumer behavior in the alcohol beverage space," that contain information specific to its products. (Def.'s Decl. in Opp'n to Mot. ("Bhunnoo Decl.") ¶ 3 (Dkt. No. 59-1); *see also* Def.'s Letter 1–2; Bhunnoo Decl. Ex. A (Dkt. No. 58-9); Bhunnoo Decl. Ex. B (Dkt. No. 58-10); Bhunnoo Decl. Ex. C (Dkt. No. 58-11).)

The Court concludes that these materials fall within one of the "categories commonly sealed," namely "confidential research and development information . . . and the like."

*Cumberland Packing Corp. v. Monsanto Co.*, 184 F.R.D. 504, 506 (E.D.N.Y. 1999).  Defendant is "engaged in a highly competitive industry and deliberately has shielded such information from its competitors" to gain a commercial advantage.  *Actavis*, 2014 WL 5353774, at \*3; *see also Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978) (recognizing that "common-law right of inspection has bowed before the power of a court" to ensure that records are not used "as sources of business information that might harm a litigant's competitive standing").  The disclosure of these internal analyses, which reflect the Company's own understanding of the "competitiveness of its" products, would cause competitive harm.  *See Oliver Wyman, Inc.*, 282 F. Supp. 3d at 706–07.[3]  Defendant's interest is particularly compelling as applied to Exhibit C, which contains significantly more detailed information than Exhibits A and B to the Bhunnoo Declaration. (*See generally* Bhunnoo Decl. Ex. C.)

The Court concludes that that the risk of commercial harm to Defendant outweighs the common law right to access, and that sealing is essential to preserve higher values and is narrowly tailored to serve that interest.  This conclusion is buttressed by the fact that the materials were, for the most part, not cited by Defendant in its own memorandum.  (*But see* Def.'s Mem. 4, 5 n.2, 16 (citing a single piece of information).)  These materials may remain under seal until further order of the Court.

---

[3] Exhibits A and B to the Declaration of Jessica Figueroa appear to be identical to Exhibits A and B to the Declaration of Zeman Bhunnoo. (*See* Def.'s Decl. in Opp'n to Mot. ("Figueroa Decl.") Ex. A (Dkt. No. 58-2); Figueroa Decl. Ex. B (Dkt. No. 58-3).)  For the reasons described here and below, the Court concludes that these Exhibits are likewise properly sealed, as are the portions of Figueroa's Declaration that describe the contents of the Exhibits. (*See* Figueroa Decl. ¶¶ 6–8, 1–12 (Dkt. No. 58-1).)  The Court views the narrow nature of the redactions requested for Figueroa's Declaration—which are limited to those paragraphs that describe the commercial information—as further supporting its conclusion that these materials are properly sealed.

### b. Descriptions and Data Regarding Customer Complaints

Defendant requests that the Court permit it to file under seal three paragraphs of the Declaration of Lindsay Helo and one paragraph of the Declaration of Brandi Gaines.  (Def.'s Letter 2.)  Defendant asserts that the Helo paragraphs "contain[] commercially sensitive information regarding the number of complaints Sazerac has received regarding Fireball Malt" that "would provide important competitive insights to competitors regarding potential weaknesses in Sazerac's product offerings."  (*Id.*; *see also* Def.'s Decl. in Opp'n to Mot. ("Unedacted Helo Decl.") ¶ 4–6 (Dkt. No. 58-4).)  The Gaines paragraph contains information about specific consumer complaints that Sazerac received regarding its Fireball Malt product.  (*See* Def.'s Letter 2; *see also* Def.'s Decl. in Opp'n to Mot. ("Unredacted Gaines Decl.") ¶ 6 (Dkt. No. 58-6).)

The Court concludes that these paragraphs do not contain "commercially sensitive information" that implicates "confidential business interests and financial information."  *IBM Corp.*, 2024 WL 343265, at *1.  The Helo Paragraphs involve a summary of materials in an internal company database that Sazerac maintains "of all inquiries and comments received from consumers" as part of its business practices.  (Unredacted Helo Decl. ¶ 3.)   It specifies the number and nature of complaints received.  (*See Id.* ¶¶ 4–6.).  Although authority on the subject appears sparse, the few orders that consider the question appear to treat customer complaints as falling beyond the confidential business information exception, even when those complaints are recorded in a company's own business records.  *See Fossil Grp., Inc. v. Angel Seller LLC*, No. 20-CV-2441, 2024 WL 2076714, at *3 (E.D.N.Y. May 9, 2024) (denying sealing request as applied to "an excerpt of Amazon's business records concerning alleged consumer complaints regarding products sold" at one of the Amazon storefronts, and "communications with

8

Amazon"); *Brown v. Vivint Solar, Inc.*, No. 18-CV-2838, 2020 WL 3250191, at *2–3 (M.D. Fla. Apr. 28, 2020) (differentiating between consumer complaints that implicated third-party privacy interests and internal communications discussing consumer complaints, and concluding that the latter did not fall within the commercial information exception).

Although these complaints "might result in adverse publicity" and are reflected in internal documents, the Court is mindful of the fact that the mere risk of adverse publicity "does not automatically warrant a protective order." *New York v. Actavis, PLC*, No. 14-CV-7473, 2014 WL 5353774, at *3 (S.D.N.Y. Oct. 21, 2014) (citation omitted). Moreover, they do not include any third-party customer information that might implicate other values, such as the privacy rights of the third parties. *Cf. Lown v. Salvation Army, Inc.*, No. 04-CV-1562, 2012 WL 4888534, at *2 (S.D.N.Y. Oct. 12, 2012) (concluding that party had not carried its burden to justify sealing of third-party resumes and job applications, as opposed to their addresses, social security numbers, names, salaries, and phone numbers); *PharmacyChecker.com LLC v. Nat'l Ass'n of Boards of Pharmacy*, No. 19-CV-07577, 2022 WL 4956050, at *3 (S.D.N.Y. Aug. 26, 2022) (concluding inclusion of third-party information justified sealing). Accordingly, the Court denies the motion to file these materials under seal without prejudice to renewal, if Defendant is able to demonstrate that sealing is appropriate.[4]

---

[4] It also appears that very similar statements in a declaration by Ms. Gaines filed in *Andrews v. Sazerac Co.* were not placed under seal—and that Defendant did not even seek to seal them. (*See* Mem. of Law in Opposition to Class Certification, Ex. 5 ¶¶ 6–8 (Dkt. No. 75) (Decl. of Brandi Gaines) (23-CV-1060).) "[T]here is no justification for keeping the information that has already been public under seal." *Louis Vuitton Malletier S.A. v. Sunny Merch. Corp.*, 97 F. Supp. 3d 485, 511 (S.D.N.Y. 2015).

c. Cost and Sales Information and Strategic Considerations

Defendant requests that the Court permit it to file under seal four paragraphs of the Declaration of Mark Brown. (*See* Def.'s Decl. in Opp'n to Mot. ("Unredacted Brown. Decl.") (Dkt. No. 58-5).) These paragraphs summarize trends in the sale of Fireball products, production cost for products, sales of products, and business strategy. (*Id.* at ¶¶ 9, 13, 15, 24; *see also* Def.'s Letter 2.) Defendant justifies these redactions on the grounds that this information, if disclosed, "could be exploited to launch competitive products, to price competitive products, and to undermine Sazerac's competitive position," as well as "compromise Sazerac's critical customer relationships." (Def.'s Letter 2.)

These materials merit sealing: "detailed financial information concerning a privately held business, not previously disclosed to the public, will in most cases warrant confidential treatment." *Closed Joint Stock Co. "CTC Network," v. Actava TV, Inc.*, No. 15-CV-8681, 2016 WL 1364942, at *3 (S.D.N.Y. Mar. 28, 2016); *accord Boothbay Absolute Return Strategies, LP v. Belgische Scheepvaartmaatschappij-Compagnie Mar. Belge SA*, No. 24-CV-1445, 2024 WL 1097128, at *8 (S.D.N.Y. Mar. 13, 2024); *see also Louis Vuitton Malletier S.A.*, 97 F. Supp. 3d at 511 (concluding proposed redactions proper where they "relate to confidential business [i]nformation regarding [defendant,] a closed business"); *IBM Corp.*, 2024 WL 343265, at *1 (permitting sealing of exhibits that "appear[] to contain confidential commercial information"). "This is particularly true where revelation of 'specific business information and strategies may provide valuable insights into a company's current business practices that a competitor would seek to exploit.'" *Boothbay Absolute Return Strategies*, 2024 WL 1097128, at *8 (quoting *Louis Vuitton Malletier S.A.*, 97 F. Supp. 3d at 511) (alterations adopted).

10

These are precisely the types of materials at issue here: sales trends, costs, and business strategy would all be information valuable to a competitor and which competitors might attempt to exploit, if filed publicly.  Moreover, the Court determines that the proposed redactions are "sufficiently narrowly tailored to protect the parties' competitively sensitive sales and marketing information" because they are limited to that information.  *See AngioDynamics, Inc. v. C.R. Bard, Inc.*, No. 17-CV-00598, 2021 WL 776701, at *7 (N.D.N.Y. Mar. 1, 2021).  Therefore, the request to file under seal is granted as to these redactions, and these materials may remain under seal until further order of the Court.

### d. Expert Reports

Defendant filed two expert reports, one by David Reibstein, Ph.D., and one by Steven Nowlis, Ph.D.; it seeks to have both reports filed fully under seal, on the basis that they rely on non-public information.  (Def.'s Letter 2.)  This request is overbroad.  Defendant may apply narrowly tailored redactions to portions of its expert reports that refer to materials that the Court has determined may be kept under seal, or to other commercially sensitive information that meets the Second Circuit's sealing standard.  *See, e.g.*, *AngioDynamics, Inc.*, 2021 WL 776701, at *9.  But it has not done so here.  It is not permissible for Defendant to "file [its] expert reports wholly under seal, given that these reports appear to contain a significant amount of information that cannot meet the *Lugosch* standard, including (but not limited to) the experts' qualifications and backgrounds, general background information about the . . . industry and the products at issue, analysis that does not rely on the parties' confidential or proprietary information, discussions of record evidence that is publicly filed, and the experts' overall opinions and conclusions . . . ."  *Id.* at *9–10.  (*See, e.g.*, Def.'s Expert Report of Steven Nowlis, Ph.D. ("Nowlis Report") 65–71 (Dkt. 58-7) (listing qualifications and materials relied upon); Def.'s

11

Expert Report of David Reibstein, Ph.D. ("Reibstein Report") 77–132 (Dkt. 58-8).)[5]

Accordingly, the request to seal is denied. Defendant may renew its sealing motion with respect

to these documents if it puts forth more narrowly tailored redactions that satisfy the sealing

standard in the Second Circuit and explains the basis for those redactions.

### e. Materials Produced in Southern Comfort Action Discovery

Plaintiff request that a portion of the reply brief discussing the contents of a document

designated as "Confidential" and produced as part of the discovery in a similar action before

Judge Arun Subramanian be filed under seal. (Pls.' Letter 1–2.) The mere fact that the

document was filed pursuant to a protective order is insufficient, on its own, to justify sealing.

*Newsday LLC*, 730 F.3d at 166. Indeed, the Court determines that Plaintiff has failed to make "a

particular and specific demonstration of fact showing that disclosure would result in an injury

sufficiently serious to warrant protection" and reminds Plaintiff that "broad allegations of harm

unsubstantiated by specific examples or articulated reasoning fail to satisfy the [common law

right of access] test." *In re Parmalat Sec. Litig.*, 258 F.R.D. 236, 244 (S.D.N.Y. 2009); *accord*

*United States v. Glob. Bus. Travel Grp., Inc.*, No. 25-CV-215, 2025 WL 1078299, at *2

(S.D.N.Y. Apr. 10, 2025).

Nevertheless, the Court recognizes that, if Plaintiff were to make the required particular

and specific demonstration of fact, it could be the case that the portions of the brief sought to be

filed under seal would be properly redacted. Accordingly, the Court denies the motion to file

these materials under seal without prejudice to renewal, if Plaintiff is able to demonstrate that

sealing is appropriate.

---

[5] In reference to the expert reports, the Court references the page numbers as generated by the Court's Electronic Case Filing System, which appear on the top-right corner of each page.

C. First Amendment

The Parties did not meaningfully address the public's First Amendment presumption of access to the materials submitted. (*See generally* Def.'s Letter; Pls.' Letter.) Nevertheless, as to those items that the Court has concluded the common law right does not apply,[6] the Court evaluates whether the public has a right to unredacted copies of the materials filed under seal. *See EFT Servs., LLC v. I-POS Sys. LLC*, No. 20-CV-1757, 2025 WL 1752144, at *5 (S.D.N.Y. June 25, 2025) (addressing First Amendment right despite failure to address by parties); *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, No. 14-MC-2542, 2023 WL 196134, at *6 (S.D.N.Y. Jan. 17, 2023) ("Finally, while the moving party bears the burden of justifying sealing, the ultimate task of balancing these interests 'rests heavily upon the shoulders of the trial judge.'" (quoting *Matter of New York Times Co.*, 828 F.2d 110, 116 (2d Cir. 1987))), *reconsideration denied,* No. 14-MC-2542, 2023 WL 3966703 (S.D.N.Y. June 13, 2023)).

The Second Circuit has held that the presumption of access under the First Amendment applies to pretrial motions and the documents submitted in connection with those motions. *Next Caller Inc. v. Martir*e, 368 F. Supp. 3d 663, 666 (S.D.N.Y. 2019) ("The Court of Appeals has held that [the] presumption applies to complaints filed in civil actions, as well as pretrial motions and written documents submitted in connection with them, and docket sheets." (citations and quotation marks omitted)); *see also Newsday LLC*, 730 F.3d at 167 (considering whether a document produced in a case was a judicial document, looking to "the use that was made, and that the parties could reasonably have been expected to make, of the [document] in connection

---

[6] As to those documents to which the common law right applies, "[b]ecause the common law framework is dispositive of the motions to seal, the Court need not undertake the First Amendment analysis." *In re Tel. Media Grp. Ltd.*, No. 23-MC-215, 2023 WL 5770115, at *6 (S.D.N.Y. Sept. 6, 2023).

13

with the . . . proceeding"). The materials that the Parties seek to seal, then, are largely subject to the public right of access—except, perhaps, in so far as they contain "proprietary information and trade secrets," which are materials "to which the general public has no right of access." *EFT Servs.*, 2025 WL 1752144, at \*5. Nevertheless, the nature of the redacted information warrants the above-described redactions. *Id.*; *see also Hatzimihalis v. SMBC Nikko Sec. Am., Inc.*, No. 20-CV-8037, 2023 WL 3736440, at \*2 (S.D.N.Y. May 31, 2023) ("Nonetheless, 'in certain circumstances, business data . . . may remain under seal even where the First Amendment is implicated.'"). As described above, the third-party consumer behavior reports are proprietary, commercially sensitive, and their disclosure would otherwise risk harm to Defendant's business interests. *See EFT Servs.*, 2025 WL 1752144, at \*5 (reasoning in the alternative that, even where the First Amendment right of access applies, sealing can be justified based on possible harms to business interests). The same can be said of the granular and specific business and sales information pertaining to Defendant's products and sales trends, which is recent information and whose disclosure would pose a risk of obvious negative effects on Defendant's business. *Cf. In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 2023 WL 196134, at \*9 (denying similar request as to "stale" and "generic" information); *id.* at \*12 (permitting certain narrow redactions targeted at margins, sales, and costs). The Court determines that these redactions are narrowly tailored to preserving those interests, as they are strictly limited to the commercially sensitive information contained in the documents.

## II.  Conclusion

For the reasons set forth above, the Parties' requests to file under seal are granted in part and denied in part. As to those materials where the Court has denied the motion to file under seal, the Parties are directed either to file unredacted copies of the materials on the docket, or to

renew their request to seal with more narrowly tailored redactions that satisfy the sealing standard in the Second Circuit and an adequate explanation of the basis for those redactions. The Parties are also reminded that, when making sealing requests, they must "proffer facts sufficient to support 'specific, on the record findings' by the Court that the sealing of this information is 'essential' to serve a 'higher value.'" *Lown*, 2012 WL 4888534, at *2 (quoting *Lugosch*, 435 F.3d at 120). In the absence of such justifications, the Court cannot properly decide a motion to seal. *See, e.g.*, *City of Almaty v. Ablyazov*, No. 15-CV-5345, 2019 WL 4747654, at *6 (S.D.N.Y. Sept. 30, 2019) (Nathan, J.) (ordering parties to resubmit their denied redaction request with "authority and articulated reasoning . . . specific to the content that they seek to keep under seal").

SO ORDERED.

Dated:   February 3, 2026
         White Plains, New York

_____
KENNETH M. KARAS
United States District Judge

15